## In re THREE MILE ISLAND LITIGATION.

Civ. A. Nos. 79–0710, 79–0763, 79–0785, 79–0791, 79–0906, 79–0912, 79–0994, 79–1018, 79–1106, 79–1242, 79–1569, 81–0412, 81–0747, 81–0748, 81–0854, 82–0380 and 84–0806 to 84–0808.

United States District Court,
M.D. Pennsylvania.

Feb. 27, 1985.

---

Arnold Levin, Howard J. Sedran, Levin & Fishbein, Philadelphia, Pa., Louis M. Tarasi, Jr., Tarasi, Tighe, Tierney & Johnson, P.C., Pittsburgh, Pa., John J. O'Brien, Jr., O'Brien & O'Brien Associates, Philadelphia, Pa., Raymond L. Hovis, Stock & Leader, William B. Anstine, Jr., Anstine & Anstine, York, Pa., Leslie B. Handler, Handler & Weiner, Harrisburg, Pa., Allan Kanner, Philadelphia, Pa., Lee C. Swartz, Hepford, Swartz, Menaker & Morgan, Harrisburg, Pa., Joseph D. Shein, Shein & Brookman, Philadelphia, Pa., Richard A. Jameson, Harrisburg, Pa., Bailey & Broder, New York City, Charles A. Buechel, Jr., Pannebaker & Associates, Middletown, Pa., for plaintiffs.

John G. Harkins, Jr., A. H. Wilcox, Pepper, Hamilton & Sheetz, Philadelphia, Pa., for defendant.

## AMENDED MEMORANDUM *

RAMBO, District Judge.

This case is before the court on defendants' Motion for Partial Summary Judgment. Defendants ask the court to dismiss the claim for punitive damages in each of the captioned actions, alleging that as a matter of federal law, punitive damages are not recoverable under the Price-Anderson Act. Pub.L. 85–256, 71 Stat. 576 (1957).

*Background*

The actions to which these motions are addressed were filed to recover for losses which are alleged to have occurred as a result of the accident at TMI on March 28, 1979. On January 27, 1984, plaintiff filed a Motion for a Rule 16 Conference to determine the applicability of *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) to the pending lawsuits. Plaintiffs argued that the Supreme Court's decision in *Silkwood,* properly read permits the recovery of punitive damages in these actions. During the conference held on February 23, 1984, a procedure was agreed upon to bring this threshold issue of the availability of punitive damages before the court for an early resolution. In an order issued that day, defendants were directed to file a motion and brief in support of their stated position that punitive damages are not available in the instant cases as a matter of law. Defendants then filed their motion for summary judgment. Briefing has been completed and the motion is ripe for consideration.

*The Price-Anderson Act*

The Price-Anderson Act was passed by Congress in 1957 as an amendment to the Atomic Energy Act of 1954. Act of Aug. 30, 1954, ch. 1073, 68 Stat. 919, as amended, 42 U.S.C. §§ 2011–2284 (1978 and Supp. 1984). The Act had the dual purpose of protecting the public by assuring a source of funds to compensate persons injured as a result of a nuclear accident and of encouraging private industry to enter into the development of nuclear power, 42 U.S.C.S. § 2012(i). *See Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1977). The Act limited the aggregate liability for a single nuclear incident to $560 million: $500 million plus the amount of liability insurance available on the private market—$60 million in 1957. The nuclear industry was required to purchase the maximum amount of privately underwritten public liability insurance and if damages from a nuclear disaster exceeded that amount, the Federal government would indemnify the licensees

---

* This memorandum amends the memorandum of February 12, 1985 and corrects a number of typographical errors and errors of form. *No substantive changes have been made.* The memorandum is issued in an amended form for reasons of expediency.

as well as other "persons indemnified"[1] in an amount not to exceed $500 million. *Duke Power*, 438 U.S. at 65, 98 S.Ct. at 2626.

The Act has been twice amended. The 1966 amendments extended the basic liability-limitation provisions for another ten years.[2] A provision was added which required those indemnified under the Act to waive certain legal defenses in the event of an extraordinary nuclear occurrence.[3] Congress was concerned that state tort law, as it relates to liability for nuclear incidents, was unsettled and that it was necessary to insure a common standard of responsibility, specifically strict liability, across all jurisdictional bounds. This was accomplished by the waiver of defenses, which Congress believed was less intrusive on state tort law than would be the enactment of a federal strict liability statute. *See, Duke Power*, 438 U.S. at 66, 98 S.Ct. at 2626.

The 1975 amendments extended the Act through 1987. A new provision required, in the event of a nuclear incident, each reactor owner to contribute a set amount toward the cost of compensating victims. 42 U.S.C. § 2210(b). The NRC subsequently set that amount to be $5 million. *See* 10 C.F.R. § 140.11(a)(4). While the liability ceiling of $560 million remained the same, the 1975 amendments effectively established a level of secondary liability. Congress further provided that "in the event of a nuclear accident involving damages in excess of [the] amount of aggregate liability, the Congress will thoroughly review the particular incident and will take whatever action is deemed necessary and appropriate to protect the public from the consequence of a disaster of such magnitude...."

*Application of the Statute*

The only Supreme Court case to construe the Price-Anderson Act was *Duke Power Co. v. Carolina Env. Study Group*, 438

U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1977). In *Duke Power*, the Court sustained the constitutionality of the Act against challenges under both the Due Process and Equal Protection Clauses of the fifth amendment. While the Court has not had another opportunity to address Price-Anderson directly, it did include those amendments in its discussion of the Atomic Energy Act in the recent decision, *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

*Silkwood* was an action brought by the decedent's father as administrator of her estate to recover for contamination injuries to Silkwood's person and property. Those injuries were allegedly sustained in her work with defendant Kerr-McGee. Asserting diversity jurisdiction, the action was based on common law tort principles under Oklahoma law. The Supreme Court held that the safety rationale of the Atomic Energy Act does not preempt the availability of an award of punitive damages in an action brought under state tort law. Specifically, the Court said:

> We do not suggest that there could never be an instance in which the federal law would preempt the recovery of damages based on state law. But insofar as damages for radiation injuries are concerned, preemption should not be judged on the basis that the federal government has so completely occupied the field of safety that state remedies are foreclosed but on *whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law.* We perceive no such conflict or frustration in the circumstances of this case. (Emphasis added)

104 S.Ct. at 626.

The *Silkwood* decision is important to the instant cases because in determining

---

1. Defined, 42 U.S.C. § 2014(t).

2. As originally enacted, the Act was applicable only to licenses issued between August 30, 1954 and August 1, 1967. § 4, 71 Stat. 576, as amended 42 U.S.C. § 2210(c).

3. The defenses of negligence, contributory negligence, charitable or governmental immunity and assumption of risk are waived in the event of an extraordinary nuclear occurrence. Also waived, to a limited degree, are defenses based on certain short state statutes of limitation. 80 Stat. 891, 42 U.S.C. § 2210(n)(1).

the availability of punitive damages under the Atomic Energy Act, the Court discussed the legislative history of the Price-Anderson amendments. The majority interpreted that history to permit the recovery of punitive damages: "[I]t is clear, that in enacting and amending the Price-Anderson Act, Congress assumed that the state law remedies, in whatever form they might take, were available to those injured by nuclear incidents." 104 S.Ct. at 617.

*Silkwood* does not resolve the issue at bar, however, because *Silkwood* was not a Price-Anderson case. The Court acknowledged this at the very beginning of its analysis. 104 S.Ct. at 623. The Court merely used the Price-Anderson amendments to illustrate its discussion of the Atomic Energy Act. Thus, all that *Silkwood* says about Price-Anderson is dicta. Defendants correctly set forth the appropriate weight to be given such dicta, as first articulated by Chief Justice Marshall:

> It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia*, 19 U.S. 264, 399–400, 5 L.Ed. 257 (6 Wheat. 120, 174) (1821).

While this court recognizes that the issue resolved by *Silkwood* must be distinguished from the issue presented today, this court must also be guided by the teachings of the Court of Appeals as it addressed itself to the significance of dicta:

> We recognize that the prior Supreme Court cases on which we rely can be factually and doctrinally distinguished. But those cases are barometers which suggest how the Court would decide this case. Just as no barometer is a precise predictor of tomorrow's weather, no prior case, which can be factually or doctrinally distinguished, is a perfect predictor of how the Court will decide a related but different case. Nevertheless, we cannot avoid our obligation to forecast or predict how the Court will decide troubling cases involving new factual situations.

*Jaffee v. United States*, 663 F.2d 1226, 1228 (3d Cir.1981).

While this court must render its own construction of the Act, it cannot ignore the clear import of the Supreme Court's decision in *Silkwood*. The analysis here must heed that forecast.

■ The argument advanced by the defendants in *Silkwood* was grounded in the doctrine of preemption. Since Congress committed the regulations of nuclear safety to the federal government, it must have intended to preempt state punitive damage awards, because any such award would be tantamount to state penal sanctions for safety violations. The Supreme Court rejected that argument, and found that the Atomic Energy Act did not preempt state remedies. Defendants here attempt to distinguish *Silkwood*. They argue that because Kerr-McGee's plutonium facility was not covered by the Price-Anderson Act in 1974 (the time of Karen Silkwood's exposure), the question of preemption was the only federal issue presented. In the case at bar, the compatibility of federal and state safety regulation is not at issue. Rather, defendants argue that where recovery is sought under the system of compensation established by the Price-Anderson Act, the district court must select the appropriate rule of decision from among the array of available remedies. Further, it must do so in the way which will best effectuate the Congressional purpose in establishing such a system. Defendants further argue that since the express purpose of Price-Anderson is compensatory, the availability of punitive damages will not effectuate but rather, will disserve, the purpose of Congress. Defendants ask this

court to look to the compensatory purpose of the act, and to fix a boundary among available state law remedies. That boundary, it is argued, should exclude punitive damages.

A careful examination of legislative history indeed reveals the intent of Congress to set up a system which would compensate victims of a nuclear accident. It also reveals an intent to interfere as little as possible with existing state tort law. Were it not for *Silkwood*, this court might accept defendants' argument. However, the Supreme Court's barometer cannot be ignored. This court is compelled to find that punitive damages are available under the Price-Anderson Act.[4]

The starting point of the analysis was set out by the *Silkwood* majority:

Kerr-McGee focuses on the differences between compensatory and punitive damages awards and asserts that, at most, Congress intended to allow the former. This argument, however, is misdirected because our inquiry is not whether Congress expressly allowed punitive damages awards. Punitive damages have long been a part of traditional state tort law. As we noted above, Congress assumed that traditional principles of state tort law would apply with full force unless they were expressly supplanted. Thus, it is Kerr-McGee's burden to show that Congress intended to preclude such awards. *See IBEW v. Foust*, 442 U.S. 42, 53 [99 S.Ct. 2121, 2128, 60 L.Ed.2d 698] (1979) (Blackmun, J., concurring). Yet, the company is unable to point to anything in the legislative history or in the regulations that indicates that punitive damages were not to be allowed.

104 S.Ct. at 625.

The Supreme Court thus held that the defendant was required to show a Congressional intent to exclude punitive damages and that it failed to meet its burden. That decision makes defendants' task here all the more difficult. They have asked this court to construe amendments to the Act which the Supreme Court has held to permit punitive damages. Defendants must point this court to language in the amendments or in the surrounding legislative history which indicates an intent to effect a change, and remove the punitive damages held to be available to injured parties under Price-Anderson.

The legislative history does not come down clearly on either side of this issue. The system of indemnification set out in the Act is described as a compensatory one. That description does not suggest a purpose consistent with an award of punitive damages. However, Congress clearly intended to keep interference with state tort law to a minimum. As the *Silkwood* majority pointed out, punitive damages have long been a part of state tort law. Further, Congress never expressed any intent to disallow punitive damages. The Joint Committee Report on the original version of the Price-Anderson Act explained the relationship between the Act and existing state tort law as follows:

Since the rights of third parties who are injured are established by State law, there is no interference with the State law until there is a likelihood that the damages exceed the amount of financial responsibility required together with the amount of the indemnity. At that point the Federal interference is limited to the prohibition of making payments through the state courts and to prorating the proceeds available. S.Rep. No. 296, 85th Cong., 1st Sess. 9 (1957).

See also, H.Rep. 435, 85th Cong., 1st Sess. 9 (1957); S.Rep. No. 1605, 89th Cong., 2d Sess. 5 (1966), U.S.Code Cong. & Admin. News 1966, p. 3201.

The 1966 Amendments to the Act arose in the context of concerns about the adequacy of state law remedies in the event of a nuclear accident. *See*, e.g., S.Rep. No. 649, *supra* at 13. In describing the waiver of defenses which would be required of

---

4. This court must also consider the recent Third Circuit decision in *Stibitz, et al v. General Public Utilities Corp., et al.*, 746 F.2d 993 (1984). That decision might well be read to further reflect a policy of non-interference with state adjudication of traditional state remedies.

operators in the event of an extraordinary nuclear occurrence, the Joint Committee stated

> By requiring potential defendants to agree to waive defenses the defendants' rights are restricted; concomitantly, to this extent, the rights of plaintiffs are enlarged. *Just as the rights of persons who are injured are established by State law, the rights of defendants against whom liability is asserted are fixed by State law.* What this subsection does is to authorize the [NRC] to require that defendants covered by financial protection and indemnity give up some of the rights they might otherwise assert. S.Rep. 1605, 89th Cong., 2d Sess. 25 (1966), U.S.Code Cong. & Admin.News 1966, p. 3226. (Emphasis added)

Similarly,

> Absent ... a determination [that the incident is an "extraordinary nuclear occurrence"], *a claimant would have exactly the same rights that he has today under existing law*—including, perhaps, benefit of a rule of strict liability if applicable State law so provides." *Id.,* at 11. (Emphasis added)

Thus, once again, the legislative history demonstrates that Congress used state law as a point of reference and did so without excluding any of its potential remedies. By defining available remedies by reference to state tort law, Congress showed no intent to exclude punitive damages.

The purpose of Price-Anderson was to protect the public while providing incentives for private industry to develop nuclear power through a system which caps liability with a specific dollar amount and provides for indemnification for some of those losses. Congress was content to permit state law to determine the types of

damages available within that framework. The availability of punitive damage does not conflict with those expressed Congressional purposes. The incentives given to the industry are accomplished by the statutory cap on liability and the system of indemnification. Punitive damages would not expand the amount of operator exposure but only vary the form which damages awards might take within that maximum dollar amount.

The argument that punitive damage awards would deplete the funds available to provide actual compensation to victims is without merit. The Congressional Committee addressed this problem in its discussion of the role of the courts in the event of an accident causing damages in excess of the liability amount. The Committee noted that

> The district court is authorized to issue orders declaring the liability limited and staying the payment of claims and the execution of court judgments. By this procedure *the right of the State courts to establish the liability of the persons involved in the normal way is maintained,* but the payment of those liabilities can be stayed. This will permit a payment to all persons who suffered damage on a prorated basis and will not permit full payment to the first claimants with no payment to the last claimants. (Emphasis added)

S. Report 296, 85th Cong., 1st Sess. at 823–24.

When it amended the Act in 1975, Congress again addressed the means by which available funds might be allocated. The Committee recommended that the district court be allowed to formulate a plan establishing priorities between classes of claims and claimants.[5] That recommendation was

---

5. The Joint Committee wishes to assure that in such a case, where the immediate recovery by claimants may be less than the full amount of their losses, the distribution of funds will be made in such a manner as to compensate first for the most severe and the most readily computable losses. Thus claims for actual losses to property, for actual and reasonable medical expenses, for loss of wages, and other such

losses may merit higher priority than such claims as those for alleged pain and suffering, emotional harm, and loss of consortium. Likewise, losses otherwise compensated for, while not precluded from recovery (under the collateral source rule) in most jurisdictions, should be accorded lower priority than uncompensated losses. The Joint Committee also believes that as a matter of equity, in

accepted by Congress. *See* 42 U.S.C. § 2210(*o* ). While this scheme does not include a place for punitive damages, given the compensatory purposes of the Act, these awards presumably would be paid only after compensation had been made for actual losses. The failure to mention punitive damages specifically, standing alone, is not enough to permit an inference by this court that Congress intended to preclude punitive damages.

 There is one final consideration which this court must address. It is possible that within this system of federal indemnification, punitive damages, if awarded by a jury, may be paid out of the Federal Treasury.[6] It is clear that the United States, its agencies and instrumentalities may not be held liable for punitive damages without the express consent of Congress. *Missouri Pac. R.R. v. Ault*, 256 U.S. 554, 563–64, 41 S.Ct. 593, 597, 65 L.Ed. 1087 (1921); *Sentner v. Amtrak*, 540 F.Supp. 557 (D.N.J.1982). Under the circumstances presented here, although punitive damages would not be assessed against the United States directly, it might become necessary to pay such awards out of the United States Treasury. This court is unable to find any intent on the part of Congress to hold the United States liable for payment of punitive damage awards. Therefore, to the extent that punitive damages assessed under the Price-Anderson Act would be paid from federal monies, such damages must be disallowed. This is perhaps not the most efficient way to administer the federal program; however, courts are not

> empowered to rewrite legislation in accord with their own conceptions of prudent public policy [citations omitted]. Only when a literal construction of a

statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied.

*United States v. Rutherford,* 442 U.S. 544, 555, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68 (1979).

An appropriate order will be entered.

## ORDER

IT IS HEREBY ORDERED THAT defendants' Motion for Partial Summary Judgment is denied.

---

cases where less than full compensation will be made through the amounts immediately available from insurance and Government indemnity, losses to offsite property of the licensee of the responsible facility should be accorded lower priority than losses to third parties. The court is authorized to establish such additional priorities as are deemed desirable and equitable to further the principles described above.

S.Rep. No. 94–454, 1975 U.S.Code Cong. & Ad. News 2251, 2264.

**6.** As noted in defendants' brief, at the present time the full limit of liability is funded through the initial and secondary layers of insurance. Therefore, no federal funds are implicated. However, at the time of the TMI accident, $85,-000,000.00 of the "financial protection" was accorded by the Federal Treasury.