KIICK, Perri C. and Kiick, Edward, Appellees,

v.

METROPOLITAN EDISON CO., and General Public Utilities Corp., and Babcock and Wilcox Company, Appellants, No. 85–5351.

and

SMITH, Terry and Smith, Michelle Smajda, Appellees,

v.

GENERAL PUBLIC UTILITIES CORP., Metropolitan Edison Co., Jersey Central Power & Light Co., Pennsylvania Electric Co., Babcock & Wilcox Company, J. Ray McDermott & Co., and Catalytic, Inc., Appellants, No. 85–5352.

Nos. 85–5351, 85–5352.

United States Court of Appeals, Third Circuit.

Argued Jan. 16, 1986.

Decided Feb. 19, 1986.

---

John G. Harkins, Jr. (argued), A.H. Wilcox, Pepper, Hamilton & Scheetz, Philadelphia, Pa. (Paul J. Mishkin Berkeley, Cal., of counsel), for appellants.

Joseph D. Shein (argued), Daniel G. Childs, Shein, Paul, Reich & Myers, P.C., Philadelphia, Pa., for appellees in No. 85–5351.

F. Lee Bailey, Aaron J. Broder, New York City (Mitchell D. Kessler (argued), of counsel), for appellees in No. 85–5352.

Arnold Levin, Howard J. Sedran, David J. Perlman, Levin & Fishbein, Philadelphia, Pa., Lee C. Swartz, Hepford, Swartz, Menaker & Morgan, Harrisburg, Pa., for amici curiae, James D. Carrigan, et al.

Before SEITZ, GIBBONS, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendants appeal from an interlocutory order of the district court denying defendants' motion for partial summary judgment. The district court denied the motion based on its conclusion that the Price-Anderson Act does not preclude the recovery of punitive damages under state law. The district court later amended its order, certifying a controlling question of law to this court under 28 U.S.C. § 1292(b). We granted permission to appeal.

### I.

These are "public liability" actions as that phrase is used in the Price-Anderson Act, Pub.L. No. 85–256, 71 Stat. 576 (1957) (codified as amended in scattered sections of 42 U.S.C.). They arise out of the nuclear accident at Three Mile Island ("TMI") in 1979. Plaintiffs are individuals who resided in the vicinity of the TMI facility at the time of the accident. They claim to have suffered emotional distress and chromosomal injury; in addition, one plaintiff alleges that the accident caused her to suffer a stillbirth. Each plaintiff seeks both compensatory and punitive damages.

Defendants are the companies that at the time of the accident were the owners and operators of the TMI facility, together with those companies that supplied design, engineering, or maintenance services, or that were vendors of systems or equipment incorporated in the facility. Each defendant is a "person indemnified" as defined in the Price-Anderson Act, 42 U.S.C. § 2014(t), through the "financial protection" system required by the Act, 42 U.S.C. § 2210(k).

In an early pretrial order, the district court bifurcated all issues of fault from the issues of causation and compensable injury, with the latter claims to be tried first.

* The Honorable John F. Gerry, United States District Court for the District of New Jersey, sitting by designation.

With respect to claims for compensatory damages, defendants agreed that plaintiffs need not allege or prove the existence of liability-creating conduct; rather, for such purposes it would be assumed that liability had been established.

Before these actions came to trial, however, plaintiffs requested a conference to determine the effect of the Supreme Court's decision in *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), on the continued bifurcation of issues. This conference resulted in defendants' motion for partial summary judgment on the question whether state-law punitive damages awards are available in actions subject to the limitations of the Price-Anderson Act. The district court ultimately denied defendants' motion, holding that the Price-Anderson Act did not preclude such awards, provided that they were not assessed against the United States. The district court subsequently amended its order, certifying the punitive damages question to this Court. We granted defendants' petition for an interlocutory appeal.[1]

In retaining subject matter jurisdiction over these actions after our opinion in *Stibitz v. General Pub. Utils. Corp.*, 746 F.2d 993 (3d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985), the district court relied, once again, on its prior opinion, *In re Three Mile Island Litigation*, 87 F.R.D. 433 (M.D.Pa.1980). *See Host Enters. v. General Pub. Utils. Corp.*, Civ. Action No. 81–0405, slip op. at 3 (M.D.Pa. Feb. 12, 1985). In so doing, the district court held that, for those actions filed prior to the Nuclear Regulatory Commission's ("N.R.C.") determination that the TMI accident did not constitute an "extraordinary nuclear occurrence," the non-frivolous allegation of such an occurrence was a proper basis for "arising under" jurisdiction, a question we expressly left open in *Stibitz. See* 746 F.2d at 996 n. 3 ("Since the complaint in this litigation was filed well after the N.R.C.'s determination was made, we have no occasion to consider whether a non-frivolous allegation of an extraordinary nuclear occurrence is a proper basis for 'arising under' jurisdiction.").

This court raised *sua sponte* the issue of whether the district court's continued exercise of subject matter jurisdiction in these cases was proper. It is to this issue that we now turn.

## II.

As in *Stibitz*, none of the parties[2] questions the existence of federal subject matter jurisdiction. Quite to the contrary, they assert that the district court's continued exercise of such jurisdiction was "obviously correct." They argue that such jurisdiction can be predicated on either the "arising under" language of 28 U.S.C. § 1337(a), or the direct grant of jurisdiction contained in the Price-Anderson Act itself, *see* 42 U.S.C. § 2210(n)(2). We will address each of these asserted bases of federal subject matter jurisdiction in turn.

### A. *"Arising Under" Jurisdiction: 28 U.S.C. § 1337(a)*

■ Petitioners assert that our decision in *Stibitz* does not preclude subject matter jurisdiction based on the "arising under" language of 28 U.S.C. § 1337(a). Relying upon language in *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 98

---

1. The question presented for our review, as certified by the district court, is:
   As a matter of federal law, are punitive damages recoverable in public liability actions under the Price-Anderson Act?
   We must, at the outset, confess some discomfort with the particular phrasing of the question certified. Because the Price-Anderson Act itself creates no cause of action or remedy in plaintiffs, we think that a more precise formulation of the question is whether the Price-Anderson Act precludes awards of punitive damages under state law in public liability actions against "persons indemnified," as that term is defined in the Act. *See* 42 U.S.C. § 2014(t). However, given our ultimate disposition of this appeal, we need not determine what, if any, implications arise from the phrasing of the question.

2. For ease of exposition in the following jurisdictional analysis, the parties to this action will be referred to jointly as "petitioners," since they are all in basic agreement on this issue.

S.Ct. 2620, 57 L.Ed.2d 595 (1978), they argue that when Congress enacted the Price-Anderson Act, it intended to create an alternative federal compensation scheme that completely replaced traditional common-law and state tort law remedies. Given this characterization of the Act, they then assert that at the time these actions were commenced,

> it was not frivolous to suppose that a claim for compensation from the financial protection afforded by the Act would be a claim arising under federal law. This would be true even if the content of many (perhaps most) of the rules of decision applicable to the claims might be derived from state law, as Congress apparently intended, and incorporated into the mechanism as federal rules of decision.

Thus, under *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776–77, 90 L.Ed. 939 (1946), they conclude that a dismissal for want of jurisdiction is inappropriate.

Put simply, petitioners disagree with the fundamental premise of our decision in *Stibitz:* that is, our characterization of the claims advanced therein as "state-created causes of action." *See* 746 F.2d at 995–96. However, after carefully reviewing the language employed by the Supreme Court in *Duke Power,* we conclude that petitioners' claim that the Price-Anderson Act "replaced" or somehow "federalized" state tort law is so completely devoid of merit as to not involve a federal controversy within the jurisdiction of a federal court. *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974); *Stibitz,* 746 F.2d at 997. Any doubt concerning the validity of this conclusion is dispelled by reading *Duke Power* in conjunction with the legislative history of the Act.

In *Duke Power,* the Chief Justice admittedly stated that "the Price-Anderson Act does, in our view, provide a reasonably just substitute for the common-law or state tort law remedies it replaces." 438 U.S. at 88, 98 S.Ct. at 2638; *see also, e.g., id.* at 93, 98 S.Ct. at 2640 ("This panoply of remedies and guarantees is at the least a reasonably

just substitute for the common-law rights replaced by the Price-Anderson Act."). However, this discussion took place in the context of the claim that the Act's provision limiting total liability to $560 million violated due process, because the Act "fail[ed] to provide those injured by a nuclear accident with a satisfactory *quid pro quo* for the common-law rights of recovery which the Act abrogates." *Id.* at 87–88, 98 S.Ct. at 2637–38 (emphasis in original). The Court did not directly address the question whether the Act had completely *replaced* state law or somehow *federalized* it; rather, it limited its inquiry to whether the Act's limitation of liability violated due process. In those limited circumstances only, then, the Court concluded that the concomitant benefits of the Act provided a "reasonably just substitute" or *quid pro quo* for any state-law rights or remedies abrogated by the Act. *See, e.g., id.* at 90–91 & n. 36, 98 S.Ct. at 2639–2640 & n. 36 (observing that Congressional assurance of a $560 million fund for recovery, coupled with statutory commitment to take whatever action is deemed necessary to protect the public. from the consequences of a nuclear accident, "to be a fair and reasonable substitute for the uncertain recovery of damages of this magnitude from a utility or component manufacturer, whose resources might well be exhausted at an early stage").

Moreover, the Court's language in *Duke Power* must be read in conjunction with the Price-Anderson Act's legislative history—a history replete with indications that Congress never intended to displace state tort law with respect to the issues of liability and recoverable damages for nuclear accidents. *Cf. Commonwealth v. General Pub. Utils. Corp.,* 710 F.2d 117, 121–22 (3d Cir.1983) (rejecting claim that "federal common law" governs such recoveries). For example, in comments accompanying the reenactment of the Act in 1966, the Joint Committee on Atomic Energy stated:

> Since its enactment by Congress in 1957 one of the cardinal attributes of the Price-Anderson Act has been its minimal interference with State law. Under the

Price-Anderson system, the claimant's right to recover from the fund established by the act is left to the tort law of the various states;

....

S.Rep. No. 1605, 89th Cong.2d Sess. 6 (1966), *reprinted in* 1966 U.S. Code Cong. & Ad. News 3201, 3206 [hereinafter cited as S.Rep. No. 1605]. In the same report, the Committee also stated that:

> This approach to the problems discussed above is in keeping with the approach followed in enacting the original Price-Anderson Act—namely, interfering with State law to the minimum extent necessary. In essence, the plan adopted permits the retention of State law with respect to the cause of action and the measure of damages....

S.Rep. No. 1605, at 9, *reprinted in* 1966 U.S. Code Cong. & Ad. News 3201, 3209; *see also Silkwood v. Kerr-McGee Corp.*, 464 U.S. at 254, 104 S.Ct. at 625 (observing that during the 1966 reenactment and amendment of the Price-Anderson Act, "the [Joint] Committee rejected a suggestion that it adopt a federal tort to replace existing state remedies, noting that such displacement of state remedies would engender great opposition").

If statements like these in the legislative history do not suffice to demonstrate the insubstantiality of petitioners' jurisdictional claims, any doubt is erased by the enactment in 1966 of a direct grant of jurisdiction for extraordinary nuclear occurrences. *See* 42 U.S.C. § 2210(n)(2). This statutory grant of jurisdiction clearly would not have been necessary had Congress intended the Price-Anderson Act to "replace" state tort law; instead, jurisdiction over all nuclear accidents, "extraordinary" or not, would have been available under 28 U.S.C. §§ 1331 or 1337(a).

Under these circumstances, then, we believe that petitioners' claims fare no better than those in *Stibitz* regarding "federal common law." *See* 746 F.2d at 996–97 (rejecting "federal common law" as a basis for "arising under" jurisdiction). We hold, therefore, that petitioners' claims that these actions "arise under" the Price-Anderson Act are "'wholly insubstantial' and provide no basis for federal jurisdiction." *Id.* at 997 (citing *Bell v. Hood*, 327 U.S. at 683, 66 S.Ct. at 776). "To hold otherwise would allow [petitioners] to allege frivolous federal claims 'solely for the purpose of obtaining jurisdiction.'" *Id.* (footnote omitted).[3]

### B. *Jurisdiction Under the Price-Anderson Act Itself*

■ The Price-Anderson Act provides, in pertinent part, that:

> With respect to any public liability action arising out of or resulting from an extraordinary nuclear occurrence, the United States district court in the district where the extraordinary nuclear occurrence takes place ... shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy.

42 U.S.C. § 2210(n)(2). Petitioners assert that—at least until the N.R.C. made a conclusive determination to the contrary—nonfrivolous allegations that the TMI accident constituted an extraordinary nuclear occurrence[4] were sufficient to establish subject

---

**3.** Petitioners also argue that our decisions in *Stibitz* and *Commonwealth v. General Pub. Utils. Corp.* conflict in that we reached the merits of plaintiffs' claims in the latter case, but dismissed the former case for want of jurisdiction. However, "when questions of jurisdiction have been passed on in prior decisions *sub silentio*, [we have] never considered [ourselves] bound when a subsequent case finally brings the jurisdictional issue before us." *Hagans v. Lavine*, 415 U.S. at 535 n. 4, 94 S.Ct. at 1378 n. 4. In such cases, therefore, we "will approach the question of the District Court's jurisdiction as an open one calling for a canvass of the relevant jurisdictional considerations." *Id.*

**4.** The Atomic Energy Act, as amended by the Price-Anderson Act, defines an "extraordinary nuclear occurrence" as:

> any event causing a discharge or dispersal of source, special nuclear, or by-product material from its intended place of confinement in amount offsite, or causing radiation levels offsite, which the Commission determines to be substantial, and which the Commission determines has resulted or will probably re-

matter jurisdiction under section 2210(n)(2). They argue that this conclusion flows logically from two cardinal rules of federal jurisdiction: first, that jurisdiction is determined at the time the complaint is filed; and second, that where a complaint asserts a federal claim and the assertion is not "immaterial" or "wholly insubstantial and frivolous," jurisdiction attaches and the soundness of the claim must be determined by a judgment on the merits.

We find petitioners' argument untenable, however. Jurisdiction under section 2210(n)(2) is expressly conditioned upon a finding that there has been an extraordinary nuclear occurrence, a determination that Congress has delegated to the N.R.C., and one that is conclusive upon this or any other court. 42 U.S.C. § 2014(j). Moreover, given the highly technical nature of the criteria employed to make this determination, see 10 C.F.R. §§ 140.84, 140.85 (1985), courts—both trial and appellate—are, at best, ill-equipped to assess whether such allegations are frivolous or not. Instead, such determinations are properly made, at least in the first instance, by agencies (like the N.R.C.) that have particular expertise or competence in such matters. Thus, given these considerations, we hold that subject matter jurisdiction arises under section 2210(n)(2) if, and only if, the N.R.C. has determined that a given accident constitutes an extraordinary nuclear occurrence. Prior to that determination, the parties' allegations—frivolous or not—cannot do what Congress has proscribed, that is, confer jurisdiction on the district court.

We are aware that the district court, as well petitioners, believe that this construction of section 2210(n)(2) places "potential plaintiffs ... in an unusual jurisdictional limbo." *In re Three Mile Island Litiga-*

*tion,* 87 F.R.D. at 437. For example, in the district court's view this construction has "the potential to create a legal hiatus which could undermine one of the basic purposes of the act, that of expediting compensation for victims of nuclear accidents." *Id.* at 438. We believe, however, that the district court and petitioners overstate the consequences of any "legal hiatus" that exists.

First, a victim of a nuclear accident like that at TMI is always free to institute a tort action in state court—a result that is consistent with both the state-law nature of the claim and Congress' desire to limit the Price-Anderson Act's interference with state tort law. *See supra* typescript at 7–10. Second, assuming *arguendo* that all of these actions will be removed to district court after the N.R.C. determination,[5] the plaintiffs in those actions are not likely to be seriously prejudiced by the accompanying change in procedure. Prior to the N.R.C. determination, a state court cannot know what affirmative defenses will or will not be available. *See* 42 U.S.C. § 2210(n)(1) (providing for the waiver of several affirmative defenses upon a N.R.C. finding of an extraordinary nuclear occurrence). Thus, these actions are not likely to have progressed very far before they are removed.

We also realize that the N.R.C. did take slightly more than one year to determine that the TMI accident was not an extraordinary nuclear occurrence; however, the length of any accompanying "hiatus" is not as unbounded as the parties assert. Assuming that the N.R.C. has not extended the time for making its determination by notice published in the *Federal Register,* if it has not made "a determination within 90 days ... that there has been an extraordinary nuclear occurrence, the alleged event will be deemed not to be an extraordinary

---

sult in substantial damages to persons offsite or property offsite. Any determination by the Commission that such an event has, or has not, occurred shall be final and conclusive, and no other official or any court shall have power or jurisdiction to review any such determination.
42 U.S.C. § 2014(j).

5. Notwithstanding the petitioners' assertions to the contrary, it is not altogether clear that all such actions would inevitably end up in the district court. Removal under section 2210(n)(2) occurs only upon the motion of the N.R.C. or defendants in the state action, and there is no guarantee that they will so move.

nuclear occurrence." *Id.* § 140.83. In addition, we take judicial notice that the N.R.C. is presently reevaluating the criteria and procedures for making such determinations in light of the difficulties encountered after the TMI accident. *See, e.g.,* Nuclear Regulatory Commission, Criteria for an Extraordinary Nuclear Occurrence: Proposed Rule, 50 Fed.Reg. 13978 (1985). The changes being considered, which are designed to simplify the overall process, should further limit the time necessary for making such determinations, thereby limiting the length of any accompanying jurisdictional "hiatus."

## III.

Accordingly, the district court's order denying defendants' motion for summary judgment and certifying a controlling question of law to this court will be vacated, and the cause will be remanded for further proceedings consistent with this opinion.[6]

---

**6.** There was some mention by counsel at oral argument that subject matter jurisdiction over the action involved in Appeal No. 85–5352 might be premised on diversity of citizenship under 28 U.S.C. § 1332. After examining the complaint in that action, we find the necessary diversity of citizenship lacking. Our finding in this regard, however, is without prejudice to any other ac-

tion currently pending in federal court in which jurisdiction under section 1332 is otherwise proper.

In addition, given our disposition of petitioners' jurisdictional claims, we need not decide whether the Smith's complaint should be treated as having been filed before or after our decision in *Stibitz.*