In re TMI LITIGATION
CONSOLIDATED
PROCEEDINGS

This Document Relates to All Plaintiffs.

In re TMI LITIGATION CONSOLIDATED TOURISM CASES

This Document Relates to All Plaintiffs.

Hyland ROGERS, Administratrix
of the Estate of James W.
Rogers, Plaintiff,

v.

METROPOLITAN EDISON COMPANY,
et al., Defendants.

Civ. A. Nos. 1:CV–88–1452, 1:CV–
88–1551 and 1:CV–88–1558.

United States District Court,
M.D. Pennsylvania.

Feb. 18, 1994.

Arnold Levin, Philadelphia, PA, Lee C. Swartz, Hepford, Swartz & Morgan, Harrisburg, PA, for Levin–1704 plaintiffs.

Dusan Bratic, Bratic & Portko, Dillsburg, PA, Louis M. Tarasi, Jr., Tarasi & Johnson, P.C., Pittsburgh, PA, for Tarasi–350 plaintiffs.

Peter J. Neeson, LaBrum & Doak, Philadelphia, PA, for Neeson–4 plaintiffs.

Terry S. Hyman, Harrisburg, PA, for Hyman–1 plaintiff.

Gregory H. Knight, Hetrick, Zaleski, Ernico & Pierce, P.C., Harrisburg, PA, for Knight–2 plaintiffs.

Richard P. Haaz, Philadelphia, PA, for Haaz–2 plaintiffs.

Robert S. Mirin, Harrisburg, PA, for Mirin–1 plaintiff.

Gary DeVito, Zarwin, Baum, Resnick & Cohen, P.C., Philadelphia, PA, for Devito–4 plaintiffs.

Shawn A. Bozarth, Harrisburg, PA, for Bozarth–1 plaintiff.

Melville Graham Merlin Walwyn, Melville G.M. Walwyn, P.C., Harrisburg, PA, for Walwyn–3 plaintiffs.

Joseph D. Shein, Philadelphia, PA, for Shein–2 plaintiffs.

Earl L. Harris, Harrisburg, PA, for Harris–3 plaintiffs.

Alfred H. Wilcox, Pepper, Hamilton and Scheetz, Philadelphia, PA, Fred Speaker, Camp Hill, PA, for General Public Utilities Corp., Babcock & Wilcox Co., Pennsylvania Electric Company, Jersey Central Power & Light Co., Metropolitan Edison Company, J. Ray McDermott & Company, McDermott Incorporated, Catalytic, Inc., Raytheon Constructors Inc., Burns & Roe, Inc., Burns and Roe Enterprises, Inc., Dresser Industries, Inc., Dresser Industrial Valve and Instrument Division of Dresser Industries, Inc., defendants.

Charles B. Zwally, Michael D. Reed, Mette, Evans & Woodside, Harrisburg, PA, Augustine V. Cheng, Associate General Counsel, Columbia University, New York City, for George Colbert.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendants' motion for summary judgment with respect to Plaintiffs' claims for punitive damages. Briefs have been filed and the motion is ripe for disposition.

### Background [1]

This is not the first time this court has addressed the issue of punitive damages in this case. Early in the history of this litigation, this court concluded that punitive damages were permissible to the extent that funds to pay such damages did not come out of the United States Treasury. *In re Three Mile Island Litigation ("TMI I")*, 605 F.Supp. 778, 784 (M.D.Pa.1985), *rev'd on other grounds sub nom., Kiick v. Metropolitan Edison Co.*, 784 F.2d 490 (3d Cir.1986).

In *TMI I*, this court relied heavily on the then-recent decision of the United States Supreme Court in *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). In *Silkwood*, the Supreme Court permitted recovery of punitive damages in a suit brought by an employee of a plutonium processing plant against her employer for radiation-related injuries. The baseline for the Court's analysis was its observation that "Congress assumed that traditional principles of state tort law would apply with full force unless they were expressly supplanted. Thus, it is [Defendant's] burden to show that Congress intended to preclude such awards." *Id.* at 255, 104 S.Ct. at 625.

The Supreme Court recognized the "tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a State may nevertheless award damages based on its

1. The procedural history of this case was set forth at length in this court's order of June 15, 1993 and, with the exception of certain issues specific to the instant motion, will not be repeated here.

own law of liability." *Id.* at 255, 104 S.Ct. at 625. Regardless of this tension, however, the Court concluded that, "in enacting the Price–Anderson Act, Congress assumed that state-law remedies, in whatever form they might take, were available to those injured by nuclear incidents." *Id.*

■ More important here, the *Silkwood* court also explicitly rejected an argument by the United States that a punitive damages award would conflict with the federal remedial scheme. *Id.* at 257, 104 S.Ct. at 626. Conflict preemption is found where:

'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143 [83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248] (1963), or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hines v. Davidowitz*, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941); *Felder v. Casey*, 487 U.S. 131, 138 [108 S.Ct. 2302, 2306, 101 L.Ed.2d 123] (1988); *Perez v. Campbell*, 402 U.S. 637, 649 [91 S.Ct. 1704, 1711, 29 L.Ed.2d 233] (1971).

*Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (parallel citations omitted). Thus, in rejecting the government's conflict preemption argument, the Supreme Court found that "[p]aying both federal fines and state-imposed punitive damages for the same incident would not appear to be physically impossible. Nor does exposure to punitive damages create an obstacle to the accomplishment of Congressional purposes and objectives in enacting the federal nuclear regulatory scheme." *Silkwood*, 464 U.S. at 257, 104 S.Ct. at 627.

In the instant motion, Defendants argue that the Price–Anderson Amendments Act of 1988 ("Amendments Act"), 42 U.S.C. § 2011 *et seq.*, as interpreted by the Third Circuit in *In re TMI Consolidated Cases II ("TMI II")*, 940 F.2d 832 (3d Cir.1991), *cert. denied sub nom., Gumby v. General Public Utilities Corp.*, 503 U.S. 906, 112 S.Ct. 1262, 117

L.Ed.2d 491 (1992), requires the court to reconsider its conclusion in *TMI I*, to reject the Supreme Court's analysis in *Silkwood* and to grant summary judgment in their favor with respect to Plaintiffs' punitive damage claims. Plaintiffs, on the other hand, assert that this court should follow its previous decision and deny the motion.

### Discussion

■ Initially, Defendants argue that *Silkwood* did not dispose of issues relevant to this case because *Silkwood* was not a Price–Anderson Act case. Defendants are correct that, technically, *Silkwood* was not within the ambit of the Price–Anderson Act.[2] However, in *Silkwood*, the Supreme Court discussed the Price–Anderson Act at length. During the course of its analysis, the Court clearly considered the provisions of the Act to be part of the relevant "federal remedial scheme" regarding nuclear regulation. For that reason, this court was persuaded in 1985 and still believes that *Silkwood* is a good barometer of the Court's likely view of the availability of punitive damages in a Price–Anderson Act case. *TMI I*, 605 F.Supp. at 782.

More fundamentally, Defendants argue that the Amendments Act requires this court to discard altogether the preemption analysis employed in *Silkwood* and other pre-Amendments Act cases addressing nuclear power and safety issues. Instead, Defendants argue that this court must "determine whether a specific state rule is or is not 'consistent with' the provisions of the Price–Anderson Act." (Defs.' Punitive Damages Supp.Br. at 8.)

Regardless of whether this court applies *Silkwood*'s conflict preemption analysis or the "inconsistency" analysis advocated by Defendants, this court believes that *Silkwood* counsels a finding that punitive damages are available in this case. If *Silkwood*'s analysis is still valid, this court has no reason to reconsider its 1985 ruling. Assuming, *arguendo*, that *Silkwood*'s approach is no longer proper, this court believes that *Silkwood*

---

**2.** At the time of Silkwood's injury, the NRC did not require her employer, a plutonium processor, to participate in the Price–Anderson Act insur-

ance pooling scheme. *See Silkwood*, 464 U.S. at 251–52 and n. 12, 104 S.Ct. at 622–23 and n. 12.

still effectively disposes of the arguments raised by Defendants.

Defendants argue in great detail that the award of punitive damages in this case is inconsistent with the overall scheme adopted by Congress in the Price–Anderson Act. However, the Supreme Court addressed essentially this same argument in *Silkwood* and decided that punitive damages were consistent with applicable federal statutes and regulations. In addressing the government's conflict preemption argument,[3] the Supreme Court explicitly found that "exposure to punitive damages [does not] frustrate *any purpose* of the federal remedial scheme." 464 U.S. at 257, 104 S.Ct. at 626 (emphasis added). As discussed above, the Court clearly considered the Price–Anderson Act to be part of the relevant federal remedial scheme. By implication, then, the *Silkwood* court concluded that punitive damages were not inconsistent with the Price–Anderson Act.[4]

This was the backdrop against which the Amendments Act was passed. In passing the Act, Congress clearly had an opportunity to overturn the Supreme Court's pronouncement in *Silkwood.* In "transform[ing] ... the entire Price–Anderson landscape ... [w]ith the passage of the Amendments Act," *TMI II,* 940 F.2d at 857, Congress did not hesitate to overturn several prior decisions of the Third Circuit with which it disagreed. *See* 42 U.S.C. § 2014(hh) (providing for federal jurisdiction over suits arising out of *all* nuclear incidents and reversing *Stibitz v. General Pub. Utils. Corp.,* 746 F.2d 993 (3d Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985); and *Kiick v. Metropolitan Edison Co.,* 784 F.2d 490 (3d Cir.1986)). Yet, despite its substantial revision of the nuclear regulatory scheme, Con-

gress only partially limited *Silkwood*'s holding.

One provision of the Amendments Act, 42 U.S.C. § 2210(s), expressly prohibits an award of punitive damages "against a person on behalf of whom the United States is obligated to make payments under an agreement of indemnification." However, while Congress made various provisions of the Amendments Act retroactive, the punitive damages provision was not one of them. *See* Pub.L. No. 100–408 § 20 (statutory note to 42 U.S.C. § 2014). Thus, that limit does not govern this case. While a statement in the legislative history indicates that Congress did not intend any inference for or against the applicability of punitive damages in other cases be drawn from the provision, *see* S.Rep. No. 70, 100th Cong., 1st Sess. 27 (1987), U.S.Code Cong. & Admin.News 1988, p. 1424, the failure of Congress to completely reverse *Silkwood* at the very least indicates that Congress did not believe an award of punitive damages in prior cases to be so inconsistent with the purposes of the Act that it must be changed.

Nor does language in *TMI II* indicate that the Third Circuit perceived punitive damages to be inconsistent with the Act.[5] First, the *TMI II* court discussed *Silkwood*'s holding regarding punitive damages without giving any indication that it no longer considered its analysis sound.

> The court found no *conflict* in *Silkwood,* because the award of punitive damages would not impede the congressional goal of promoting nuclear safety. Permitting the states to apply their own nuclear regulatory standards, in the form of the duty owed by nuclear defendants in tort, would, how-

---

3. *See* Section III.B. of the *Silkwood* opinion. 464 U.S. at 257–258, 104 S.Ct. at 626.

4. The *Silkwood* court also rejected the defendants' arguments that the award of punitive damages was preempted because it "frustrates Congress' express desire 'to encourage widespread participation in the development and utilization of atomic energy for peaceful purposes'" as expressed in the Atomic Energy Act, 42 U.S.C. § 2013(d), and that a punitive damages award "conflicts with Congress' express intent to preclude dual regulation of radiation hazards." *Id.* Instead, the Court found that "the award of

punitive damages in this case does not hinder the accomplishment of the purpose stated in § 2013(d)" and that "Congress did not believe that it was inconsistent to vest the NRC with authority over the safety aspects of nuclear development while at the same time allowing plaintiffs ... to recover for injuries caused by nuclear hazards." 464 U.S. at 257–58, 104 S.Ct. at 626.

5. While the Third Circuit was not required to address squarely the issue of punitive damages in *TMI II,* that court's comments have a measure of persuasive and predictive value for this court.

ever, "frustrate the objective of the federal law."

*TMI II,* 940 F.2d at 859.

Second, when discussing punitive damages, the *TMI II* majority noted that the Amendments Act "placed *limits* on the availability of punitive damages." 940 F.2d at 854. The court did not interpret the Act as excluding punitive damages altogether. Further, in his concurrence, Judge Scirica went further in noting that "punitive damages remain available when the government is not obligated to make payments under an indemnity agreement." *Id.* at 874 n. 6.

Finally, the indemnity agreement cited by the Supreme Court in *Silkwood* as evidence that the NRC contemplated the award of punitive damages in Price–Anderson Act cases, *see* 464 U.S. at 255 and n. 17, 104 S.Ct. at 619 and n. 17, apparently has not changed in the more than five years since the passage of the Amendments Act.

Based on the foregoing, the court concludes that the holding of its prior case remains valid. Accordingly, punitive damages are available in this case to the extent that the funds to pay such damages do not come out of the United States Treasury. An appropriate order will be issued.