Esmond, Appellant, *v.* Liscio (et al., Appellant).

202

Argued November 15, 1966. Before Ervin, P. J., Wright, Watkins, Montgomery, Jacobs, Hoffman, and Spaulding, JJ.

*James A. Stranahan, III,* with him *Stranahan & Stranahan,* for Ohio Casualty Insurance Company, appellant.

*Albert E. Acker,* with him *Cusick, Madden, Joyce, Acker and McKay,* for Erie Insurance Exchange, appellee.

*Bernard Goldstone,* with him *Routman, Moore and Goldstone,* for plaintiff, appellant, appellee.

OPINION BY HOFFMAN, J., December 16, 1966:

On October 19, 1963, Michael Liscio was approached by his son John and a friend, Robert Spinelli. John asked if he might borrow his father's automobile for the evening. Mr. Liscio readily agreed, provided that John did not drive, since his license had been suspended several months earlier. The two youths proceeded to a tavern in Ohio, where John met another friend, Judd Youkers. John, who had been drinking heavily, gave the car keys to Youkers, who then drove toward Sharon, Pennsylvania. John was seated as a passenger in the front of the automobile.

While driving on State Line Road in Sharon, Youkers struck Joseph Esmond, a pedestrian, with the right front fender of the car. Liscio then opened the car door, striking Esmond a second time.

Esmond brought actions in trespass against both youths. He secured a judgment of $4000, including $1000 punitive damages, against John Liscio, and a judgment of $2000, including $500 punitive damages, against Judd Youkers.

Esmond then instituted these garnishment proceedings against the Ohio Casualty Insurance Company (hereinafter, Ohio), Michael Liscio's insurer. He also named the Erie Insurance Exchange, Youkers' insurer, as garnishee on the Youkers judgment.

Michael Liscio is the named insured under a Garage Liability Policy issued by Ohio. The policy provides:

"Part I—Liability. Coverage A—Bodily Injury Liability. . . . Persons insured. Each of the following is an

insured under Part I . . . (1) The named insured . . . [and] (3) With respect to the Automobile Hazard: (a) any person while using, with the permission of the named insured, an automobile to which the insurance applies . . . provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. . . ."

The policy further provides: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. Bodily injury . . . caused by accident. . . ."

The following provision appears at the end of Part I: "Assault and Battery. Assault and battery shall be deemed an accident unless committed by or at the direction of the insured."

Both garnishment actions were consolidated for trial and heard by the court below sitting without a jury. The court found that John Liscio was using the car with his father's permission and was, consequently, an "omnibus insured" under the Ohio policy. The court further found that John Liscio's act in opening the car door was wanton, not intentional. It, therefore, entered a finding against Ohio in the sum of $3000 on the Liscio judgment, but denied recovery against the insurer on the $1000 punitive damages award. The court also found that Judd Youkers had the elder Liscio's implied permission to operate the automobile and was entitled to coverage under the Ohio policy. It therefore entered a finding against Ohio in the sum of $1500 on the Youkers judgment, again denying recovery on the punitive damages award. No finding was entered against Erie Insurance Exchange, because its policy provided Youkers with "excess" coverage only.

On exceptions, the court reversed its original finding that John Liscio's act in opening the car door was wanton, describing it instead as an intentional assault. The court then denied any recovery to Esmond on the

Liscio judgment, stating that an intentional act was not an "accident" within the meaning of the Ohio policy. On reargument, the court reversed itself again and held that the Ohio policy did cover liability arising from John Liscio's assault. The $3000 judgment against Ohio was reinstated.

The Ohio Company now appeals from both judgments, arguing that Judd Youkers was not an insured under the terms of its policy and that John Liscio's assault is excluded from coverage. Plaintiff Esmond appeals from the dismissal of his claims for punitive damages against the insurer.

## I

Ohio first contends that Judd Youkers was not operating the Liscio automobile with the permission of Michael Liscio, the named insured. Consequently, it argues, Youkers was not entitled to the status of an additional insured under the policy's "omnibus" clause.

The lower court found that Judd Youkers ". . . had permission to drive Michael Liscio's car at the time the plaintiff was injured. Though the permission was not specifically given to Youkers, it is clearly implied. . . ." The evidence amply supports such a finding.

John Liscio testified that his father had permitted him to use the car, in the company of a licensed driver, on many previous occasions. Five different boys, including Youkers, had driven the car before. On the night of the accident, Mr. Liscio allowed John to use the car for his own pleasure, without limitation as to time or place. He attached only one condition: John was not to do the actual driving.

Michael Liscio corroborated this testimony. Any licensed driver, who was also an acquaintance of his son, had permission to drive the car. Mr. Liscio had

no specific objection to Youkers' driving the car on the night in question. He did not tell his son that only Spinelli was to drive, and he did not intend that no one else should operate the vehicle.

The permission necessary to entitle Youkers to the status of an additional insured need not be express. It may be in the form of an "implied affirmative consent or it may result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced." *Snyder v. Carlson,* 135 Pa. Superior Ct. 390, 392, 5 A. 2d 588, 589 (1939). Michael Liscio knew that his son's license had been suspended. When he permitted John to use the car, he clearly contemplated that any of the boy's friends who were qualified drivers might operate the vehicle. Indeed, he stated as much on cross-examination:

"Q. In other words Mr. Liscio, you didn't object at all to any driver of your car while your son was in it, is that what you are stating, who was licensed?

. . .

"A. Well, providing they were acquaintances of my boy.

"Q. In other words, any acquaintance of John's could drive that car, is that correct, provided he was a licensed driver?

"A. Well, I guess I would say that."

In these circumstances, the court properly concluded that Judd Youkers had permission to drive Michael Liscio's car when the plaintiff was injured. See *Conrad v. Duffin,* 158 Pa. Superior Ct. 305, 44 A. 2d 770 (1945).

Ohio relies on *Helwig v. Esterly,* 205 Pa. Superior Ct. 185, 208 A. 2d 10 (1965). There, however, the son's permission to use the car was qualified by an express prohibition against its use by his fiancee, who was driving when the accident occurred. No such prohibition appears in the record before us.

Nor is *Volk v. Cacchione,* 395 Pa. 636, 150 A. 2d 849 (1959), pertinent here. In that case, the evidence showed, at best, an implied permission to Cacchione to drive the car while accompanied by the owner's son. At the time of the accident, however, Cacchione was alone in the car. In order to recover, the Court held, the plaintiff "would have [had] to prove that [the owner] permitted Cacchione to use the automobile for his *unlimited* personal pleasure and *with no younger member of the* [*owner's*] *family present."* (Emphasis supplied). *Id* at 641-642.

We conclude, therefore, that Judd Youkers was operating the Liscio automobile on the night in question with the permission of Michael Liscio, the named insured. Consequently, he was entitled to coverage as an additional insured under the Ohio policy.

## II

Ohio next contends that John Liscio's act in striking plaintiff Esmond with the car door was an intentional assault and, as such, excluded from policy coverage.

We agree with Judge McKAY, in his opinion sustaining defendant insurer's exceptions, that the trial court's 17 finding of fact ("The act was wanton, not intentional,") is not supported by the evidence. Liscio testified specifically that he opened the car door to "hit the person that was walking the other way." Apart from one equivocal answer, he stood by this assertion throughout an intensive and searching cross-examination.

The trial judge evidently believed that Liscio was so intoxicated at the time he struck Esmond as to be incapable of committing an intentional assault. Quite apart from the fact that there was no medical

testimony in the record to support such a conclusion, it is refuted by Liscio's own admissions:

"Q. Now Mr. Liscio, isn't it a fact that you had between ten and fifteen shots of liquor and maybe four or five beers before you left with Mr. Youkers?

. . .

"A. Yes.

"Q. And isn't it a fact, sir, that you really don't know what happened as you were driving down the street in that automobile?

"A. No.

"Q. Pardon?

"A. No.

"Q. It's not a fact?

"A. No.

"Q. You do know what you were doing?

"A. I knew that I opened the door.

"Q. And that's all you know, is that correct?

"A. Until I felt the door being forced closed, yes, that's correct.

"Q. And that you didn't intentionally open this door to hit this gentleman, did you?

. . .

"A. No, that's not correct.

"Q. What is your testimony now sir?

"A. That I opened the door for the purpose of hitting the man.

"Q. You opened the door for the purpose of hitting the man, and that's what you are saying now, under oath?

"A. Yes."

Moreover, while voluntary intoxication may so cloud the mind as to deprive it of the power of premeditation and deliberation, *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353 (1949), it will not prevent the formation of the general intent necessary for the commission of an assault and battery. See

6 C.J.S. "Assault and Battery" §25(b)(1), and, generally, Hall, Intoxication and Criminal Responsibility, 57 Harvard Law Review 1045 (1944).

We conclude, therefore, that Liscio's act was an intentional assault.[1] That determination, however, does not dispose of the question of policy coverage. While the policy insures only against liability for bodily injury caused by accident, an assault is deemed an accident *"unless committed by or at the direction of the insured."*

Ohio contends that the phrase "by . . . the insured" refers back to the policy's "omnibus clause," which defines "an insured" as the named insured *and* any person using the automobile with his permission. Thus, the qualifying clause would operate as an exclusion in *every* case where the assault was committed by a person entitled to protection under the policy. Plaintiff Esmond argues, on the other hand, that the phrase "by . . . the insured" refers only to the named insured, Michael Liscio, who, concededly, did not commit or direct the commission of the assault and battery in this case. We reject both constructions.

The reasonable interpretation of such a clause is that it was intended to embody the maxim of public policy that a person should not be indemnified by insurance against the consequences of his willful, criminal assault.[2] *Western Casualty & Surety Co. v.*

---

[1] An assault is an act which "is a legal cause of a contact with another's person . . . and which is offensive to a reasonable sense of personal dignity . . . if (a) *the act is done with the intention of inflicting a harmful or offensive contact upon the other. . . ."* *Commonwealth v. Bird,* 152 Pa. Superior Ct. 648, 653, 33 A. 2d 531, 533 (1943). (Emphasis supplied).

[2] See the dictum of Mr. Chief Justice HORACE STERN in *Wilson v. Maryland Casualty Company,* 377 Pa. 588, 589 n., 105 A. 2d 304, 305 n. (1954) : "Of course a person *could not* contract for indemnity against liability for damage or injury caused by his own wilful act, much less an assault and battery committed by him. A

*Aponaug Mfg. Co.,* 197 F. 2d 673 (5th Cir. 1952). It means that when the coverage of the policy as to a particular insured is at issue and that insured either committed or directed the assault, then, as to that insured, the assault is not deemed an accident. *Morgan v. Greater New York Taxpayers Mutual Insurance Association,* 305 N.Y. 243, 112 N.E. 2d 273 (1953); *Malanga v. Manufacturers Casualty Insurance Co.,* 28 N.J. 220, 146 A. 2d 105 (1958); *Arenson v. National Automobile and Casualty Insurance Co.,* 45 Cal. 2d 81, 286 P. 2d 816 (1955); *Employers Surplus Lines of Boston, Mass. v. Stone,* 388 P. 2d 295 (Okl. 1963); 12 Couch, Insurance (2d ed.), §45.41; but cf. *Jernigan v. Allstate Insurance Co.,* 269 F. 2d 353, rehearing 272 F. 2d 857 (5th Cir. 1959).

So interpreted, the assault and battery provision is not hopelessly contradictory, as the lower court thought. It would protect Mr. Liscio, for example, if he were held vicariously liable for an assault by an employee or agent entrusted with the use of the automobile.[3] The qualifying clause could not have been intended to operate as an exclusion in such a case, because public policy does not forbid indemnification of an insured for losses arising from an assault in which he took no part. *Morgan v. Greater New York Taxpayers Mutual Insurance Association,* supra. This construction is further supported by decisions which hold that a policy extending coverage

---

contract to insure against such liability would obviously be void as being in violation of public policy." But cf. *Brower v. Employers' Liability Assurance Company, Ltd.,* 318 Pa. 440, 442, 177 A. 826, 827 (1935); *Sky v. Keystone Mutual Casualty Company,* 150 Pa. Superior Ct. 613, 616-17, 29 A. 2d 230, 231-32 (1942).

[3] It should be noted that the Ohio insurance contract is a Garage Liability Policy. It applies, inter alia, to liability arising from the "ownership, maintenance or use of any automobile for the purpose of garage operations. . . ."

to several persons creates several obligations on the part of the insurer, so that a particular insured is not precluded from recovering merely because the claim of another insured is barred under the terms of an exclusion provision. See *Arenson v. National Automobile and Casualty Insurance Co.,* supra, and cases there cited.

We recognize that an ambiguity in a contract of insurance is to be construed most strongly against the insurer. *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company,* 385 Pa. 394, 123 A. 2d 413 (1956). Nevertheless, we can see no warrant for adopting plaintiff's reading of the provision in question: "Assault and battery shall be deemed an accident [and hence covered by the policy] unless committed by or at the direction of the *named* insured." It is difficult to see why the ambiguity here demands a resolution furnishing broader coverage to the additional insured than to the named insured himself. Furthermore, the public policy forbidding indemnification to one who personally commits an assault would seem to apply with equal force, whether the tortfeasor is the named or additional insured. We think the parties intended the qualifying clause to mean "unless committed by or at the direction of the insured *seeking coverage.*"

In the instant case, we are confronted with a liability arising directly from a wilfull, intentional, and criminal assault by an insured, for which a judgment was rendered against the perpetrator alone. See *Haser v. Maryland Casualty Company,* 78 N.D. 893, 53 N.W. 2d 508 (1952). We hold that all liability arising therefrom, including punitive damages assessed against John Liscio, is excluded from coverage under the insurance policy before us.

### III

Finally, plaintiff Esmond contends that Ohio should be compelled to pay the $500 in punitive damages awarded him against Judd Youkers. While the insurance policy before us does not expressly exclude such coverage,[4] we agree with the court below that public policy does not permit a tortfeasor, in these circumstances, to shift the burden of punitive damages to his insurer.

Pennsylvania adheres to the orthodox view that punitive damages are in no sense intended as compensation to the injured plaintiff. They are, rather, a penalty, imposed to punish the defendant and to deter him and others from similar "outrageous" conduct. *Voltz v. General Motors Acceptance Corporation,* 332 Pa. 141, 2 A. 2d 697 (1938) ; *International Electronics Company v. N.S.T. Metal Products Company, Inc.,* 370 Pa. 213, 88 A. 2d 40 (1952) ; *Chambers v. Montgomery,* 411 Pa. 339, 192 A. 2d 355 (1963) ; *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 197 A. 2d 721 (1964) ; Restatement of Torts §908(1) (1939).

When socially irresponsible drivers are guilty of reckless and grossly offensive conduct on the highways, there are sound and compelling policy reasons for not allowing them to escape the element of personal punishment in punitive damages. To permit insurance against the sanction of punitive damages would be to permit such offenders to purchase a freedom of misconduct altogether inconsistent with the theory of civil punishment which such damages represent.

In the words of Judge WISDOM, in *Northwestern National Casualty Company v. McNulty,* 307 F. 2d

---

[4] It provides : "The company will pay on behalf of the insured *all sums* which the insured shall become *legally obligated to pay as damages* because of A. bodily injury . . . caused by accident. . . ." (Emphasis supplied)

432, 441-42 (5th Cir. 1962), "It is no answer to say, society imposes criminal sanctions to deter wrongdoers; that it is enough when a civil offender, through insurance, pays what he is adjudged to owe. A criminal conviction and payment of a fine to the state may be atonement to society for the offender. But it may not have a sufficient effect on the conduct of others to make the public policy in favor of punitive damages useful and effective. . . . [T]he delinquent driver must not be allowed to receive a windfall at the expense of the purchasers of insurance, transferring his responsibility for punitive damages to the very people—the driving public—to whom he is a menace. We are sympathetic with the innocent victim here. . . . But his interest in receiving non-compensatory damages is small compared with the public interest in lessening the toll of injury and death on the highways; and there is such a thing as a state policy to punish and deter by making the wrongdoer pay." See also, *Nicholson v. American Fire & Casualty Insurance Co.,* 177 So. 2d 52 (Fla. 1965); *Crull v. Gleb,* 382 S. W. 2d 17 (Mo. 1964).

Of course, the imposition of liability for compensatory damages also tends to discourage wrongful conduct. But the function of compensatory damages is primarily to shift the loss from a wholly innocent party to one who is at fault. "The rationale of compensatory damages is not so much a policy that the responsible party *should* pay; it is more a policy that the wholly innocent party *should not* pay. Insurance against compensatory liability therefore does not frustrate the reason for imposing the liability." *Northwestern National Casualty Company v. McNulty,* supra, at 438.

It is true that a majority of the courts confronted with this question have held insurers liable for punitive damages. But the rule apparently to be derived from

these decisions will not bear close scrutiny. Thus, two often-cited Alabama cases are of little value as precedent. *Capital Motor Lines v. Loring,* 238 Ala. 260, 189 So. 897 (1939); *American Fidelity and Casualty Company v. Werfel,* 230 Ala. 552, 162 So. 103 (1935). Because of the peculiar nature of Alabama's wrongful death statute, all damages awarded in such actions are considered "punitive," even though their purpose may be compensatory. Another line of cases, represented by *Ohio Casualty Ins. Co. v. Welfare Finance Co.,* 75 F. 2d 58, 60, (8th Cir. 1934), is also readily distinguishable. There, the plaintiff won a judgment for punitive damages against the insured arising out of a wanton act by the insured's servant. The court stated: "In this situation where there was no direct or indirect volition upon the part of the master in the commission of the act, no public policy is violated by protecting him from the unauthorized and unnatural act of his servant." In general, allowing one who is only vicariously liable for punitive damages to shift the burden of satisfying the judgment to his insurer does not conflict with the rule of policy which we announce today. In such cases, the insured is guilty of no wrongdoing, nor is the award of punitive damages made to punish him. See Note, Automobile Liability Insurance and Punitive Damages, 39 Temple Law Quarterly 459 (1966). Nearly all of the remaining decisions imposing liability on the insurer fail to consider the critical public policy question, which we believe to be controlling.

We conclude, therefore, that Ohio is not required to pay the award of punitive damages levied against its additional insured, Judd Youkers.

In summary, we hold that:

(1) Judd Youkers was operating the Liscio automobile with the implied permission of Michael Liscio, the named insured. Consequently, he was entitled to

coverage under the Ohio Casualty Insurance Company policy, and the insurer must pay the compensatory damages awarded plaintiff as a result of Youker's negligence.

(2) Ohio is not required to pay the punitive damages awarded against Youkers, because public policy does not permit a tortfeasor who is *personally* guilty of wanton misconduct to shift the burden of punitive damages to his insurer.

(3) Ohio is not liable on any part of the judgment secured by plaintiff Esmond against John Liscio, because the insurance contract before us affords no protection to an insured who has himself committed an intentional assault and battery.[5]

Accordingly, the judgment of the lower court directing the payment of $3000 plus interest by Ohio to the plaintiff, by reason of John Liscio's assault, is reversed. In all other respects, the judgments appealed from are affirmed.

---

[5] Of course, nothing in our opinion today relieves Youkers and Liscio from personal liability on the unsatisfied judgments against them.