## State Farm Mutual Automobile Insurance Company v. Martin

*Marianne Corr,* for plaintiff.

*Peter M. Hileman,* for defendants Richard Capper and Catherine Capper.

*Thomas J. Sacchetta,* for defendants Barry Livergood and April Martin.

*Wallace H. Bateman,* for defendant Frederick Martin.

RUFE, W., *J.,* July 12, 1994—In this declaratory judgment action, the plaintiff, State Farm Mutual Automobile Insurance Company seeks to deny coverage to its own insured on the basis that the acts he committed, which injured the claimants, were "intentional acts" and not "accidental," and therefore are not covered.

The undisputed facts are all stipulated by the parties and are set forth hereinafter exactly as stipulated:

(1) The defendants April Martin and Frederick Martin were married but legally separated as of July 23, 1991.

(2) On July 23, 1991, Frederick Martin was the registered owner of a Ford pickup truck which was insured by State Farm Mutual Automobile Insurance Company. A true and correct copy of this policy is attached to this stipulation,[1] and it is stipulated and agreed that the provisions of this policy were in effect on July 23, 1991. This policy provided liability coverage for bodily injury and damages caused by accident.

(3) On July 23, 1991, Frederick Martin lived at 740 Joseph Road in Warminster, Pennsylvania.

(4) On July 23, 1991, April Martin lived at 920 Truman Court in Warrington, Pennsylvania. She lived there with her children Charles Dierkes (who was approximately 17 years old as of July 1991), Matthew Dierkes (approximately 16 years old as of July 1991), Tara Grammes (approximately 10 years old as of July 1991), and

---

1. The insurance policy in its entirety was attached to the stipulation, but is not reproduced herein.

Frederick Martin Jr. (approximately 4 years old as of July 1991). Barry Livergood, Mrs. Martin's boyfriend, also lived at 920 Truman Court on July 23, 1991.

(5) On July 23, 1991, the property at 920 Truman Court was owned by Richard and Catherine Capper and was rented by them to Mrs. Martin.

(6) On July 22, 1991, Frederick Martin consumed alcohol at his home at 740 Joseph Road in Warminster. Late that evening, he drove his truck from his home to April Martin's home at 920 Truman Court in Warrington. He arrived at April Martin's home at approximately midnight on July 23, 1991.

(7) As of July 23, 1991, April Martin was the registered owner of a Chevrolet Impala which was parked in front of April Martin's home when Frederick Martin arrived there shortly after midnight.

(8) As of July 23, 1991, Barry Livergood owned a vehicle which was parked in the driveway of April Martin's home when Frederick Martin arrived there shortly after midnight.

(9) When Frederick Martin arrived at April Martin's home, her sons Matthew and Charles Dierkes were standing in the street by the Chevrolet Impala registered to April Martin.

(10) Frederick Martin drove his truck twice into the rear of the Chevrolet Impala.

(11) April Martin came out of the house, saw Frederick Martin in his truck, and told him to go home. As she turned and walked back towards her house, Frederick Martin drove his truck onto the lawn and struck April Martin as she approached the doorway of the house.

(12) After striking April Martin, Frederick Martin drove his truck into the front of the house at 920 Truman

Court. The truck became stuck on a brick wall at the front of the house.

(13) While Frederick Martin's truck was stuck on the brick wall, April Martin's sons pulled her from under the truck and into the house.

(14) Frederick Martin freed his truck from the brick wall and twice reversed up a small incline and then drove forward into the house, striking the house a total of three times. As a result of Frederick Martin's actions, the property owned by the Cappers was damaged.

(15) Frederick Martin then struck Barry Livergood's car with his truck, ran over a cable box on the lawn of the property at 920 Truman Court, and drove away.

(16) Frederick Martin was arrested a short distance from April Martin's home at 12:17 a.m. on July 23, 1991 by Officer Daniel Gallagher of the Warrington Township Police Department. Officer Gallagher observed Frederick Martin staggering, and detected an odor of alcoholic beverage coming from his mouth. Frederick Martin's eyes were glassy and he was speaking with slurred speech. He stumbled about and had trouble maintaining his balance. An open beer can and an open bottle of apricot brandy were found in Frederick Martin's vehicle at the time he was stopped by Officer Gallagher.

(17) At approximately 1:20 a.m. on July 23, 1991, Frederick Martin consented to have blood drawn at Warminster General Hospital. Toxicology tests revealed that Frederick Martin had a blood alcohol level of .26 percent.

(18) At approximately 3:02 a.m., Frederick Martin, who was in the Warrington Township holding cell, rammed his head into the cell door. He was taken by Officer Lawrence Fallon to Warminster General Hospital, and received stitches for a laceration.

(19) The reasonable cost of repairing the damage to the Cappers' home is $6,294.10.

The pertinent clause in the insurance policy provides as follows:

"We will

"1. Pay damages which *an insured* becomes legally liable to pay because of:

"a. *Bodily injury* to others, and

"b. Damage to or destruction of property including loss of its use, *caused by accident* resulting from the ownership, maintenance or use of *your car....*" (emphasis added)

The policy does not include its own definition of "accident" for the purposes of the coverage. State Farm contends it does not owe any duty of coverage to its insured, Frederick Martin, or the claimants, because his actions, which injured the claimants, were all clearly intentional and not accidental and therefore not covered by the policy. For the further purpose of this opinion we will accept State Farm's position and assume that Frederick Martin intended specifically to injure all of the claimants in this case, both as to bodily injury and property damage. We will also assume that Frederick Martin will become "legally liable to pay" damages to all of the claimants.

The question of coverage therefore turns on the definition of "accident." No definition of accident is provided in the policy, nor is there any limiting language excluding coverage for intentional acts as sometimes appears in insurance policies: *Urian v. Equitable Life Assurance Society,* 310 Pa. 342, 165 A.388 (1933) (policy excluded coverage for intentional acts, *i.e.* suicide); *Esmond v. Liscio,* 209 Pa. Super. 200, 224 A.2d 793 (1966) (policy excluded assaults committed by the in-

sured but *covered* as an "accident" an assault by a third party in proper possession of the insured vehicle when the assault was not directed by the insured).

We look first to *Webster's*[2] where among the several definitions listed we find the following which appears most applicable to the present case: "ac-ci-dent ... 2 ... b: an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but from the consequences of which he may be entitled to some legal relief...."

Next we turn to *Black's*[3] where included in a very lengthy general definition for accident we find the following, " ... In its most commonly accepted meaning, or in its ordinary or popular sense, the word may be defined as meaning a fortuitous circumstance, event or happening, an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; ..." *Black's* then continues on with more specific definitions in a number of specific usages including: "Insurance Contracts—An accident within accident insurance policies is an event happening without any human agency, or if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens."

With these definitions in mind it is clear that while the actions of Frederick Martin, the insured, are not accidents insofar as he is concerned because he intended the damage results he achieved, from the standpoint

---

2. *Webster's Seventh New Collegiate Dictionary,* copyright 1971, G. & C. Merriam & Co., p. 5.

3. *Black's Law Dictionary,* Revised Fourth Edition, 1968, Henry Campbell Black, M.A., pp. 30-31.

of the injured parties the events or happenings are certainly "unusual," "unexpected," are "not due to any fault or misconduct on the part of the person injured," and they will most certainly "be entitled to some legal relief." Accordingly, we are led to the inescapable conclusion that the claimants' damages are the result of "accidents" and State Farm is obligated to provide coverage against which the claimants can assert their claims.

## ORDER

And now, July 12, 1994, it is hereby ordered and decreed that State Farm Mutual Automobile Insurance Company shall provide coverage to all claimants against their insured, Frederick Martin, under the policy of insurance in effect on the date of the accident of July 23, 1991.