

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-1995

# In Re: TMI

Precedential or Non-Precedential:

Docket 94-7600

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"In Re: TMI" (1995). *1995 Decisions.* Paper 269.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/269

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Nos. 94-7600, 94-7601, 94-7602


IN RE:  TMI

METROPOLITAN EDISON COMPANY ("MET ED"); PENNSYLVANIA
ELECTRIC COMPANY; JERSEY CENTRAL POWER & LIGHT COMPANY;
GENERAL PUBLIC UTILITIES CORP.; BABCOCK & WILCOX CO.;
MCDERMOTT, INC.; DRESSER INDUSTRIES, INC.; UE & C –
CATALYTIC, INC. (RAYTHEON); BURNS & ROE ENTERPRISES,

Appellants Nos. 94-7600/7601

METRO EDISON COMPANY ("MET ED"); PENNSYLVANIA ELECTRIC
COMPANY; JERSEY CENTRAL POWER & LIGHT COMPANY; GENERAL
PUBLIC UTILITIES CORP.; BABCOCK & WILCOX CO.; MCDERMOTT,
INC.; DRESSER INDUSTRIES, INC.; UE & C – CATALYTIC, INC.
(RAYTHEON); BURNS & ROE ENTERPRISES,

Appellants No. 94-7602


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. Nos. 88-cv-01452, 88-cv-01551, 88-cv-01558)


Argued: May 1, 1995

Before:  SCIRICA, McKEE, AND SAROKIN, Circuit Judges.

(Filed October 17, 1994)

ALFRED H. WILCOX, ESQUIRE (ARGUED)
ELLEN KITTREDGE SCOTT, ESQUIRE
Pepper, Hamilton & Scheetz
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
    Attorneys for Appellants

ARNOLD LEVIN, ESQUIRE (ARGUED)
LAURENCE S. BERMAN, ESQUIRE
FRED S. LONGER, ESQUIRE
Levin, Fishbein, Sedran & Berman
320 Walnut Street, Suite 600
Philadelphia, PA  19106

LEE C. SWARTZ, ESQUIRE
SANDRA L. MEILTON,ESQUIRE
Hepford, Swartz & Morgan
111 North Front Street
Post Office Box 889
Harrisburg, PA  17108

WILLIAM R. WILSON, JR., ESQUIRE
654 North State Street
Jackson, MS  39202
     Attorneys for Appellees,
     Dorothy L. Aldrich, et al.


LOUIS M. TARASI, JR., ESQUIRE
Tarasi & Johnson
510 Third Avenue
Pittsburgh, PA  15219
     Attorney for Appellees,
     Estate of Henrietta Adams, et al.

OPINION OF THE COURT



McKEE, Circuit Judge.

In this interlocutory appeal we are asked to determine whether persons who claim to have been injured by radiation from a nuclear reactor can recover punitive damages under state law. For the reasons that follow we conclude that plaintiffs here may recover punitive damages under Pennsylvania law and we will therefore affirm the decision of the district court.

## I. PROCEDURAL HISTORY

These actions were begun in the aftermath of the March 28, 1979 nuclear accident at the Three Mile Island nuclear reactor in Dauphin County, Pennsylvania ("TMI"). Appellants – corporations which owned, operated, or supplied materials or services to TMI – are the defendants in personal injury actions brought by (or on behalf of) more than 2,000 individuals who resided in the vicinity of TMI at the time of the accident. Plaintiffs attempt to recover both punitive and compensatory damages for illnesses allegedly resulting from exposure to radiation released during the accident. Because these actions seek damages on account of the hazardous properties of special nuclear material, they are "public liability actions" arising under the Price-Anderson Act, as amended by the Amendments Act of 1988. See The Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, 102 Stat. 1066 (1988) (codified at 42 U.S.C. § 2014(hh)) [hereinafter the "Act" or the "Amendments Act"].

The history of the several cases that have been litigated in this circuit as a result of the TMI accident is as long as it is complex, and we will only detail those proceedings that bear upon the issue currently us.[1] Plaintiffs seek punitive damages against defendants General Public Utilities Corporation and Metropolitan Edison Company [hereinafter "defendants"] for

---

[1] For a review of other related TMI proceedings and the issues that have been decided in previous rulings, see In re TMI Litig. Cases Consol. II, 940 F.2d 832, 835 (3d Cir. 1991) ("TMI II").

defendants' alleged willful, wanton and reckless indifference to information concerning faulty plant equipment and design at TMI. Plaintiffs rest their claim for punitive damages upon assertions that defendants were aware of such information yet failed to take proper precautions to guard against the potentially dangerous effects of the equipment. Plaintiffs also assert that defendants falsified leak rate tests and reports submitted to the Nuclear Regulatory Commission and knowingly operated TMI in violation of technical specifications.[2]

Early in the course of the TMI litigation, the district court recognized the difficulty posed by the question of plaintiffs' right to recover punitive damages under the Price Anderson Act. In order to prevent the litigation from being held up while that issue was addressed, the court bifurcated the damages claims and deferred consideration of the punitive damages claims until after resolution of the claims for compensatory damages. In re TMI Litig. Personal Injury Claims, No. 79-0906 (M.D. Pa. order entered Dec. 30, 1982); App. at 162.

While these and companion TMI cases were being litigated in state and district court, the Supreme Court decided Silkwood v. Kerr-McGee Corp., 464 U.S. 238 (1984), which held in part, that states are precluded from regulating the safety aspects of nuclear energy but that states still had authority under the Act

---

[2] Defendants pled no contest to possession, use and operation of a utilization facility in violation of NRC regulations in a criminal prosecution arising out of the same nuclear incident that gives rise to this civil suit. See United States v. Metropolitan Edison Co., CR-83-00188 (M.D. Pa. order entered Feb. 29, 1984).

4

to control nonregulatory aspects of nuclear facilities. Id. at 240-41, 256. Following the decision in Silkwood, the district court denied defendants' motion for summary judgment that had been filed following a Rule 16 conference. See In re Three Mile Island Litig., 605 F. Supp. 778, 784 (M.D. Pa. 1985) (holding that punitive damages are recoverable under the Price-Anderson Act, to the extent that damages assessed under the Act would not be paid from federal monies) [referred to herein as "TMI I"]. Shortly thereafter, defendants successfully petitioned this court for interlocutory review of that ruling. We ruled that the Price-Anderson Act provided no basis for federal jurisdiction, vacated the district court's order denying summary judgment, and remanded the matter back to the district court for remand to state court. See Kiick v. Metropolitan Edison Co., 784 F.2d 490 (3d Cir. 1986).

Meanwhile, Congress enacted the Amendments Act of 1988 which became effective on August 20, 1988. The Amendments Act created a federal cause of action, the "public liability action," and mandated that federal courts shall have both original and removal jurisdiction over such actions. 42 U.S.C. § 2210(n)(2). This provision retroactively conferred "arising under" jurisdiction by way of public liability actions over these cases. See In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d Cir. 1991), cert. denied sub nom., Gumby v. General Public Utils. Corp., 112 S. Ct. 1262 (1992) ["TMI II"]. The Amendments Act also placed a "limitation," (more accurately described as a prohibition) on punitive damages awards in public liability actions where the

5

United States is obligated to make indemnification payments on behalf of a particular defendant. 42 U.S.C. § 2210(s).

Defendants eventually moved for partial summary judgment on plaintiffs' claims for punitive damages. Defendants argued before the district court that Pennsylvania's allowance of punitive damages was inconsistent with the compensatory nature of the Amendments Act as well as that Act's prohibition against state regulation of the safety aspects of nuclear reactors. The district court denied partial summary judgment and held that punitive damages are available in these cases so long as the money to pay such awards does not come from the United States Treasury. In re TMI Litig. Consol. Proceedings, Nos. 1:cv-88-1452, 1:cv-88-1551, 1:cv-88-1558, slip op. at 9 (M.D. Pa. Feb. 18, 1994). Thereafter, the district court certified a number of issues for interlocutory appeal, including defendants' right to recover punitive damages. We here only address defendants' right to recover punitive damages. In companion opinions we address the remaining issues that were certified for appeal.

## II. DISCUSSION.

The question of law certified for appeal by the district court for this interlocutory appeal is:

> Whether Pennsylvania's rules of decision relating to punitive damages are inconsistent with the provisions of the federal Price-Anderson Act, as amended, and therefore may not serve as rules of decision to be applied in a "public liability action" under the Price-Anderson Act.

In re TMI Litig. Consol. Proceedings, Nos. 1:cv-88-1452, 1:cv-88-

6

1551, 1:cv-88-1558, slip op. at 6 (M.D. Pa. July 13, 1994).  In

holding that punitive damages awards under Pennsylvania law do

not violate the Price-Anderson Act or its Amendments, the

district court stated:

> Defendants argue in great detail that the
> award of punitive damages in this case is
> inconsistent with the overall scheme adopted
> by Congress in the Price-Anderson Act.
> However, the Supreme Court addressed
> essentially this same argument in Silkwood
> and decided that punitive damages were
> consistent with applicable federal statutes
> and regulation.  In addressing the
> government's conflict preemption argument,
> the Supreme Court explicitly found that
> 'exposure to punitive damages [does not]
> frustrate any purpose of the federal remedial
> scheme.'  464 U.S. at 257 (emphasis added). .
> . . the Court clearly considered the Price-
> Anderson Act to be part of the relevant
> federal remedial scheme.  By implication,
> then, the Silkwood court concluded that
> punitive damages were not inconsistent with
> the Price-Anderson Act.

Id. at 5.  The district court concluded that none of the 1988

amendments to the Price-Anderson Act had changed the Supreme

Court's conclusion.  The court reasoned that § 2210(s) of the

Amendments Act, limiting punitive damages, has no retroactive

application, and therefore "that limit does not govern this

case."  Id. at 7.  In addition, the district court properly

observed that this "court did not interpret the Act as excluding

punitive damages altogether[]" in TMI II.  Id. at 8.  Finally,

the court noted that the indemnity agreement providing for

coverage for punitive damages, which is available to insureds

under the Amendments Act, 10 C.F.R. § 140.91, Appendix A, ¶2(c),

7

p. 489 (1993), is still unchanged. Id. at 8-9. Based upon this analysis the district court concluded that plaintiffs could recover punitive damages and denied defendants' motion for partial summary judgment. Id.

Because the issue certified for review is purely a question of law, our review is plenary. Buzzard v. Roadrunner Trucking, Inc., 966 F.2d 777, 779 (3d Cir. 1992). Our consideration of this issue is informed by statutory language, legislative history and the relevant case law.

## A. The Language of the Amendments Act

By now, "[i]t is axiomatic that statutory interpretation begins with the language of the statute itself." Government of Virgin Islands v. Knight, 989 F.2d 619, 633 (3d Cir. 1993) (citing Pennsylvania Dep't. of Pub. Welfare v. Davenport, 495 U.S. 552, 557-58 (1990)). "Courts presume that Congress expressed its legislative intent through the ordinary meaning of the words it chose to use, and if the statutory language is unambiguous, the plain meaning of the words ordinarily is regarded as conclusive." Id. Plaintiffs argue that the plain meaning of the language in the Amendments Act counsels that punitive damages are available in these actions. We agree.

It is not disputed that these suits are "public liability actions." See TMI II, 940 F.2d at 857; 42 U.S.C. § 2210(n). Such actions include suits asserting "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . . ." 42 U.S.C. § 2014(w) (emphasis added). Section 2014(w) does exclude certain types of claims from those

8

that may be brought under that statute. See 42 U.S.C. §2014(w)(i-iii). Significantly, claims for punitive damages are not listed as an exception. Accordingly, the district court's conclusion is further supported by the doctrine of *inclusio unius est exclusio alterius* "which informs a court to exclude from operation those items not included in a list of elements that are given effect expressly by the statutory language." Williams v. Wohlgemuth, 540 F.2d 163, 169 n.30 (3d Cir. 1976). Thus, 42 U.S.C. § 2014(w)(i-iii) "`is as significant for what it omits as for what it says.'" Id. (citation omitted). Our analysis therefore turns on a determination of whether punitive damages fall within the scope of "any legal liability" as that phrase is used in the Act. Obviously, as defendants concede, punitive damages are a type of legal liability. (Transcript of Oral Argument at 4-5.) The Supreme Court has reaffirmed that punitive damages are normally included within the concept of tort liability:

> [O]ne of the hallmarks of traditional tort liability is the availability of a broad range of damages to compensate the plaintiff "fairly for injuries caused by the violation of his legal rights." . . . [P]unitive or exemplary damages are generally available in those instances where the defendant's misconduct was intentional or reckless.

9

United States v. Burke, 112 S. Ct. 1867, 1871-72 (1992). See also TXO Production Corp. v. Alliance Resources Corp., 113 S. Ct. 2711, 2718 (1993) (finding legal liability for punitive damages by affirming a judgment of $19,000 in compensatory damages and $10 million in punitive damages).

The Amendments Act was not intended to alter the nature of the tort claims which constitute public liability actions. Indeed, the Act directs that "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of . . ." the Price-Anderson Act. 42 U.S.C. § 2014(hh). Here, the applicable state law is that of Pennsylvania, as TMI is located in Pennsylvania. See id. Historically, Pennsylvania has recognized punitive damages as a form of liability. See Thompson v. Swank, 176 A.2d 211, 211 (Pa. 1934) ("Where the injurious act is willful, malicious, or wanton, the jury, according to the malignity shown, without bias or feeling, may award a reasonable sum in vindication of the rights of the injured party as exemplary or punitive damages."); Cf. Martin v. Johns-Manville Corp., 494 A.2d 1088, 1096 (Pa. 1985) (plurality) ("As a general guide in this area Pennsylvania recognizes the principles set forth in Section 908(2) of the Restatement of Torts (Second): `(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. . . .'"); Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984) (same).

10

Defendants assert that the Price-Anderson Act has three relevant objectives:  "(1) assure the availability of funds to compensate persons injured; (2) limit liability to the funds so provided, to encourage private industry to invest in the nuclear power alternative; (3) achieve resolution of nuclear accident claims as efficiently and expeditiously as possible."  Brief of Appellants at 6.  Defendants argue that Pennsylvania's punitive damages rules are premised upon retribution, deterrence and punishment, and that they therefore can not apply to operators of nuclear reactors after the Price-Anderson Act and the 1988 Amendments.  See Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 803 (Pa. 1989) ("the purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others from similar conduct").  Accordingly, defendants argue that the inherently penal nature of punitive damages in Pennsylvania is inconsistent with the purposes and policies of the public liability action, and the Act therefore precludes plaintiffs from recovering punitive damages.  We disagree.

As noted above, defendants' position is undermined by the very language of the statue it is based upon.  The Amendments Act does specifically prohibit punitive damages, but that prohibition is far more narrow than defendants' construction suggests.  Section 2210(s) states:

### Limitation of punitive damages

No court may award punitive damages in any action with respect to a nuclear incident or precautionary evacuation against a person

11

on behalf of whom the United States is
obligated to make payments under an agreement
of indemnification covering such incident or
evacuation.

42 U.S.C. § 2210(s).  However, even this prohibition is limited
and applies only "with respect to nuclear incidents occurring on
or after Aug. 20. 1988."  Because TMI occurred in 1979, well
before the effective date of the 1988 Amendments, the qualified
prohibition does not apply here. See 42 U.S.C. § 2210 note (1988)
(Effective Date of 1988 Amendment).  Again, the language "is as
significant for what it omits as for what it says." Williams,
supra.

Moreover, we concluded in TMI II that imposition of state
remedies in a public liability action would not frustrate the
objectives of the Price-Anderson Act.  TMI II, 940 F.2d at 859.
It was there noted that "[t]he ban on punitive damages applies
only to nuclear incidents occurring after August 20, 1988, which
does not include this case. . . . It should also be noted that
punitive damages remain available when the government is not
obligated to make payments under an indemnification agreement.
See 42 U.S.C. § 2210(s) (1988)." Id. at 874 n.6 (Scirica, J.
concurring).

In Silkwood, the Court held that the Atomic Energy Act[3] had
not preempted a state authorized award of punitive damages.  464
U.S. at 256.  Although the Price-Anderson Act did not control the
analysis in Silkwood, the Court concluded that "the discussion
preceding its enactment and subsequent amendment indicates that

---

[3]    42 U.S.C. §§ 2011-2284 (1976 ed. and Supp. V).

12

Congress assumed that persons injured by nuclear accidents were free to utilize existing state tort law remedies." Id. at 251-52. The defendants in Silkwood had argued that an award of punitive damages "frustrates Congress' express desire `to encourage widespread participation in the development and utilization of atomic energy for peaceful purposes'" as expressed in the Atomic Energy Act, 42 U.S.C. § 2013(d), and that such an award "conflicts with Congress' express intent to preclude dual regulation of radiation hazards." Id. at 257-58. The Court disagreed. "[T]he award of punitive damages in this case does not hinder the accomplishment of the purpose stated in §2013(d)". The Court further stated; "Congress did not believe that it was inconsistent to vest the NRC with authority over the safety aspects of nuclear development while at the same time allowing plaintiffs . . . to recover for injuries caused by nuclear hazards." Id. at 257-58.

Thus, although Congress clearly intended to preempt state regulation of nuclear safety standards when it enacted Price-Anderson, "the award of punitive damages would not impede the congressional goal of promoting nuclear safety." TMI II, 940 F.2d at 859. All that has changed since TMI II is the enactment of the 1988 Amendments, and it is clear from the unambiguous language of those Amendments that Congress did not intend to change the result the Supreme Court had reached in Silkwood.

In view of the sweeping changes effectuated in the Amendments Act, Congress could easily have completely precluded punitive damages in every case arising out of a nuclear incident

13

or precautionary evacuation. However, Congress declined to extend its punitive damages limitation that far. The district court correctly reasoned:

> In passing the [Amendments] Act, Congress clearly had an opportunity to overturn the Supreme Court's pronouncement in Silkwood. In "transform[ing] . . . the entire Price-Anderson landscape . . . [w]ith the passage of the Amendments Act," TMI II, 940 F.2d at 857, Congress did not hesitate to overturn several prior decisions of the Third Circuit with which it disagreed. See 42 U.S.C. §2014(hh) (providing for federal jurisdiction over suits arising out of all nuclear incidents and reversing Stibbitz [sic] v. General Pub. Utils. Corp., 746 F.2d 993 (3d Cir. 1984), cert. denied, 469 U.S. 1214 (1985); and Kiick v. Metropolitan Edison Co., 784 F.2d 490 (3d Cir. 1986). Yet, despite its substantial revision of the nuclear regulatory scheme, Congress only partially limited Silkwood's holding.
>
> . . . While a statement in the legislative history indicates that Congress did not intend any inference for or against the applicability of punitive damages in other cases be drawn from the provision, see S. Rep. No. 70, 100th Cong., 1st Sess. 27, (1987), the failure of Congress to completely reverse Silkwood at the very least indicates that Congress did not believe an award of punitive damages in prior cases to be so inconsistent with the purposes of the Act that it must be changed.

In re TMI Litig. Consol. Proceedings, Nos. 1:cv-88-1452, 1:cv-88-1551, 1:cv-88-1558, slip op. at 6-7 (M.D. Pa. Feb. 18, 1994).

## B. Legislative History

Presented with the unambiguous language of the Act we need not, and ordinarily should not, look to its legislative history

14

for clarification. Nevertheless, "[a] court may consider persuasive legislative history that Congress did not intend the words they selected to be accorded their common meaning. A construction inconsistent with a statute's plain meaning, however, is justifiable only when clear indications of a contrary legislative intent exist." Knight, 989 F.2d at 633 (citations omitted).

We disagree with defendants' position that references in the Act's legislative history suggest that punitive damages would "undermine" the "compensatory purposes" of the legislation and make it unworkable. Brief of Appellants at 20. The availability of punitive damages does not undermine Congress' compensatory scheme as set forth in the insurance/indemnification provision of the Amendments Act. In the discussion which preceded the Amendments Act, the House Committee eliminated a proposed amendment to preclude punitive damages entirely. In so doing, the House Committee confirmed that the holding of Silkwood is still controlling authority on that issue:

> The current Act [pre-1988 Amendments] does not expressly state whether a court may award punitive damages in connection with a claim arising out of a nuclear incident. Nor does the Act expressly state whether private financial protection funds or government indemnity funds could be used to pay punitive damages if imposed. In 1984, in Silkwood v. Kerr-McGee Corporation, 464 U.S. 238, the U.S. Supreme Court resolved the first of these two issues when it held that the Atomic Energy Act, as amended by the Price-Anderson Act, does not prevent a court from imposing punitive damages under state tort law. The

Court did not address the second issue, however, whether private financial protection or government indemnity funds available under the Price-Anderson Act could be used to pay a punitive damages award.

During the 99th Congress, the Subcommittee on Energy and the Environment approved an amendment to H.R. 3653 that would have prohibited use of either private financial protection or government indemnity funds available under the Act to pay punitive damage awards. The purpose of this amendment was to prevent the limited funds available for compensating actual injuries from being used to pay punitive awards. A serious question arose, however, whether the amendment subjected NRC licensees and DOE contractors to unlimited liability for punitive damages, thereby undermining one of the primary tenets of the Act. <u>Accordingly the Committee subsequently agreed to eliminate the amendment, thus restoring current law on the issue.</u>

H.R. Rep. No. 104, 100th Cong., 1st Sess., pt.1, at 19 (May 21, 1987) (emphasis added). The then current law on the issue of punitive damages was expressed in the holding of <u>Silkwood</u>. Thus, the legislative history reveals that the compromise in the legislative process led to a statute permitting punitive damages, despite the House Committee's reservations concerning such awards. <u>See id.</u> ("the Committee remains opposed to punitive damage awards in connection with claims arising under the Price-Anderson Act because such awards could have the effect of diminishing the limited funds available to compensate actual injuries"). Thus, Congress decidedly declined the opportunity to expressly eliminate punitive damages.

Subsequent consideration of the Amendments Act in the Senate also indicates Congress' intent to allow punitive damages:

16

Section 13 prohibits courts from awarding punitive damages under State law in any action that involves a nuclear incident if the action is brought against a Department of Energy Contractor, subcontractor or supplier indemnified under the Price-Anderson Act. The provision insures that the Federal taxpayers will not have to pay punitive damages, consistent with established Federal policy, most forcefully stated in the Federal Tort Claims Act (28 U.S.C. 2674), that punitive damages may not be awarded against the Federal Government.

This provision does not preclude the award of punitive damages against persons, including licensees of the Commission, who are not indemnified by DOE under the Price-Anderson Act. The Committee intends no preference, for or against the awarding of punitive damages in suits against such persons, be inferred from the inclusion of this provision in the bill.

S. Rep. No. 70, 100th Cong., 1st Sess. 27 (June 12, 1987), reprinted in 1988 U.S.C.C.A.N. 1424, 1440 (emphasis added).

Similarly, the Committee on Environment and Public Works, concluded:

The bill clarifies that an award of punitive damages is prohibited if the award would result in any obligation of the United States to make any payments for public liability. This reflects the longstanding policy that the Federal government should not be liable for punitive damages.

Thus, all punitive damages would be prohibited in actions involving DOE contractors indemnified under section 170 r. Punitive damage awards also would be prohibited in suits against licensees covered by the retrospective premium system, if, as a result of such an award, payments beyond the primary and secondary layers of financial

17

> protection would be necessary, since the United States is obligated to provide a source of funding for such claims.
>
> The bill does not otherwise affect current law regarding punitive damages.

S. Rep. No. 218, 100th Cong., 2d Sess. 12–13, reprinted in 1988 U.S.C.C.A.N. 1476, 1487–88 (emphasis added).

It is hard to imagine more lucid declarations of Congressional intent, and we will not judicially amend this statute or subvert the policy of the legislation by adopting defendants' arguments to the contrary.

## C.    Purpose of Punitive Damages

As noted above, defendants accurately characterize the purposes of punitive damages under Pennsylvania law. See Martin v. Johns–Manville Corp., 494 A.2d 1088, 1096 (Pa. 1985) ("In Pennsylvania, the function of punitive damages is to deter and punish egregious behavior.") (citations omitted).[4]    However, those penal objectives are not necessarily in conflict with the Amendments Act.

Defendants correctly point out that the 1988 Act created a system of mandatory insurance premiums in order to create a fund to compensate those who were injured in nuclear accidents. This scheme causes all operators of nuclear reactors to collectively shoulder the cost of damages paid to anyone who recovers in a public liability action. Defendants rely in part upon Esmond v.

---

[4]    We note that Pennsylvania law is consistent with the Supreme Court's characterization of punitive damages. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974) (describing punitive damages as "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence").

18

Liscio, 224 A.2d 793 (Pa. Super 1966), to argue that punitive damages can not be imposed on any particular defendant or group of defendants without violating this collective approach to compensation. They suggest that "Pennsylvania's law does not permit one personally guilty of conduct which warrants imposition of punitive damages to `shift the burden of punitive damages to his insurer.'" Brief of Appellants at 15 (quoting Esmond, 224 A.2d at 800). We do not think that Esmond prohibits punitive damages in a public liability action. Under the scheme of compensation established by the Amendments, an award of punitive damages which required payment out of the second layer of liability would presumably be spread vicariously through the industry, and no one facility would be penalized more than another. See 42 U.S.C. § 2210(b). This is not totally inconsistent with Esmond wherein the court stated, "[i]n general, allowing one who is only vicariously liable for punitive damages to shift the burden of satisfying the judgment to his insurer does not conflict with the rule of policy that we announce today." 224 A.2d at 800.

As a practical matter we are, of course, aware of the possibility that several large punitive damage awards here, as with any mass tort litigation involving a limited fund, might deplete the fund. In Juzwin v. Amtorg Trading Corp., 705 F. Supp. 1053, 1055 (D. N.J.) modified, 718 F. Supp. 1233, 1235 (D. N.J. 1989), then district judge Sarokin noted the particular dangers that plague punitive damage awards in mass tort

19

litigation and expressed concerns which we share in deciding the availability of punitive damages in these cases:

> Defendants can be held liable over and over again for the same conduct, a result which would be barred by virtue of the right against double jeopardy in a criminal matter. Although an award in an individual case may be fair and reasonable, the cumulative effect of such awards may not be. . . .

> Payment to individual plaintiffs rather than to a fund or class raises special problems in mass tort litigation. There is a decided risk that the earlier claimants will deplete the available assets to pay later claimants. Such a risk may exist even as to compensatory damages, but it would seem inappropriate to impose repeated penalties on a company if the result is to deny compensatory damages to subsequent claimants.

See also Dunn v. HOVIC, 1 F.3d 1371, 1393 (3d Cir. 1993) (dissenting opinion arguing against punitive damages awards in mass tort cases in general and in asbestos cases in particular).

As we explained in Dunn, "[w]e do not disagree with the concerns that have been expressed about punitive damages awards . . . . We differ instead with those who would have the judiciary resolve the conflicting policy arguments." Id. at 1387. We have neither the authority nor the desire to usurp Congress' policymaking function regarding the benefits and burdens of punitive damages in mass tort cases; rather, we are constrained to interpret the law as written. In doing so, however, we call attention to the possible inequities built into a statutory scheme such as is before us here, where plaintiffs must resort to a finite fund to get compensatory as well as punitive damages.

Because there is no conflict between the Amendments Act and

20

the substantive laws of Pennsylvania which allow punitive damages, we will instruct the district court to proceed with the litigation of these matters in a manner consistent with this opinion. In so doing, we emphasize that the district court has authority to prioritize the various claims if punitive damages are awarded and that the Price-Anderson Act's tri-level insurance scheme is easily adaptable to such a prioritization of claims. It cannot be gainsaid that "[i]f there is a limited fund, priority should be given to compensating those who have been injured rather than conferring windfalls on those who have already been compensated." Juzwin, 705 F. Supp. at 1055. We see nothing in the Act that precludes a district court from using its discretion to limit or even preclude punitive damages in accordance with the financial constraints of the fund and the Act's prohibition against punitive damage awards being paid out of the federal layer of insurance. However, we do not express any view as to whether the district court should so exercise its discretion. We leave the resolution of this issue to the district court.

### III. CONCLUSION

For the reasons set forth herein, we will affirm the ruling of the district court granting plaintiffs the right to attempt to recover punitive damages, and remand these matters for further proceedings consistent with this opinion.

21